**Floyd W. VAUGHN, Plaintiff and Appellee,**

v.

**Sam R. Erion and Linda K. Erion, Defendants,**

and

**James J. EGGLESTON and Marlys M. Eggleston, Defendants, Third-Party Plaintiffs, and Appellants,**

v.

**Ivan T. SHONLEY and Dorothy U. Shonley, Defendants.**

No. 13946.

Supreme Court of South Dakota.

Considered on Briefs April 19, 1983.

Decided June 15, 1983.

Rehearing Denied July 18, 1983.

---

minors.

George Beal, Rapid City, for plaintiff and appellee.

Reed C. Richards of Richards & Richards, Deadwood, for defendants, third-party plaintiffs, and appellants.

HENDERSON, Justice.

## ACTION

Appellee Vaughn filed a complaint against appellant Egglestons and others seeking an injunction and damages for alleged violations of restrictive real estate covenants. Appellant Egglestons answered and counterclaimed. A court trial ensued resulting in a judgment for a permanent and mandatory injunction against appellant Egglestons. We affirm.

## FACTS

Appellee Vaughn developed the Alice Subdivision in the Black Hills between Deadwood and Sturgis, South Dakota. In 1975, appellee Vaughn sold appellant Egglestons Lot 9 in the Alice Subdivision subject to recorded restrictive covenants running with the land. In 1980, appellant Egglestons purchased a new two-section, double-wide mobile home and moved it upon Lot 9, notwithstanding two warnings that , he could not do so. Appellee Vaughn twice vigorously protested this move, first in the spring of 1979 and later in May of 1980, on the basis of a restrictive covenant providing:.

6. No structure of a temporary character, trailer, basement, tent, shack, garage, barn or other out building shall be erected upon or used on any lot for a residence at any time, either temporary or permanent, except for a camper, camping trailer or tent may be used for thirty (30) days each year for camping subject to the provisions of covenant 7 hereof and must have some sanitary disposal of sewage. All construction of all buildings shall be of new material and new construction and no building shall be moved onto any lot from any other lot or from outside the

above described property, except new modular buildings. All buildings must meet with all South Dakota Building Codes in effect on date of construction.

Appellant Egglestons claimed their home was a modular building and refused to remove the structure. A trial ensued wherein it was established: (1) the manufacturer's certificate of origin designated appellants' home as a mobile home; (2) appellants received certificates of title for each unit; (3) appellants' home was assessed and taxed as a mobile home for 1981 and 1982; (4) each unit of appellants' home has a steel substructure underneath the floor; and (5) appellants' home has not been affixed to a permanent foundation.

Appellant Egglestons' counterclaim, in relevant part, asserted appellee Vaughn had violated and waived the restrictive covenants by: (1) allowing construction of a 100,000-gallon water reservoir and a no trespassing sign on Lot 13 in violation of covenants providing in part: "No commercial activity of any kind shall be permitted on these lots ..." and "No signs of any kind shall be displayed ..."; (2) allowing the owners of Lot 17 to live in the basement of an incomplete and nonframed home since 1979; and (3) allowing disabled vehicles and trash to accumulate on lots in violation of a covenant providing in part: "Said premises shall not be used or maintained as a dumping ground for old cars, rubbish or trash ...."

Evidence at trial established: (1) Lot 13 had an underground water reservoir with an exposed 18-inch high flat roof; (2) the water reservoir served an adjacent subdivision; (3) appellee considered the reservoir to be a utility within a covenant providing: "4. An easement both over and under ground is reserved over a reasonable part of said lot to be exercised in a manner not to interfere with reasonable utilization of said lot for residential purposes for utility installation and maintenance"; (4) the owners of Lot 17 did live in a flat roofed concrete block structure upon which they intended to frame a home; (5) appellee wrote the owners of Lot 17 informing them of the necessi-

ty of complying with the covenants; (6) since 1979, two disabled vehicles rested on Lot 17; and (7) an abandoned refrigerator, 55-gallon drum, and trash existed on Lot 7.

The trial court entered findings of fact, conclusions of law, and a judgment resulting in a mandatory injunction requiring appellants to remove their home from Lot 9 as it was a mobile home in violation of Covenant number 6.

## ISSUES

### I.

WAS THE TRIAL COURT CLEARLY ERRONEOUS IN FINDING APPELLANT'S HOME TO BE A MOBILE HOME IN VIOLATION OF COVENANT NUMBER 6? WE HOLD THE TRIAL COURT WAS CORRECT.

### II.

DID APPELLEE'S ACTIONS OR INACTION CONSTITUTE WAIVER OF THE COVENANTS? WE HOLD THAT COVENANT NUMBER 6 WAS NOT WAIVED.

## DECISION

### I.

Our standard of review for this action is to uphold the trial court unless its findings are "clearly erroneous." SDCL 15–6–52(a). "A finding is 'clearly erroneous' when after reviewing all of the evidence we are left with a definite and firm conviction that a mistake was made." *Matter of Estate of Nelson*, 330 N.W.2d 151, 155 (S.D.1983). *See also, In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970).

Our recent decision upon a strikingly similar fact pattern in *Farnam v. Evans*, 306 N.W.2d 228, 230 (S.D.1981), is dispositive of the covenant violation as we held therein: "Unlike a modular home, appellants' dwelling was designed without a permanent foundation and is totally capable of being used without any modifications or the addi-

tion of an underlying foundation." Appellant Egglestons' dwelling is unequivocally a mobile home. It has no permanent foundation and was taxed as a mobile home in 1981 and 1982. This determination is unaltered by our adoption of the rationale of *Sylvan Glens Homeowners Ass'n v. McFadden,* 103 Mich.App. 118, 302 N.W.2d 615 (1981), that the mere term "trailer" does not adequately embody "mobile homes." Language of Covenant number 6 provides: "[N]o building shall be moved onto any lot from any other lot or from outside the above described property, except new modular buildings." As appellant's mobile home is not a modular building, and was moved onto Lot 9 in two separate sections bearing two separate titles, the trial court's findings of fact on this issue are not clearly erroneous. Restrictive covenants are sanctioned in South Dakota. *See* SDCL ch. 43–12. Egglestons' mobile home violated the restrictive covenants. Appellee Vaughn testified that when he informed Mr. Eggleston that he was in violation of the covenants, Mr. Eggleston replied: "Yes, but he did not care what the Judge told him he would not move it off anyway."

## II.

Appellant Egglestons assert appellee Vaughn was unable to enforce Covenant number 6 because he acquiesced in other violations of the covenants thereby purportedly waiving his enforcement rights.

As regards this issue, this is a case of first impression for we have not previously addressed the possibility of waiving enforcement of restrictive covenants. We start from the premise:

[T]he real purpose of restrictive covenants contained in a residential subdivision plat [i]s "the protection of property values in the subdivision so as to increase the desirability of these lots as residences through the existence of such restrictions." *Thodos v. Shirk,* 248 Iowa 172, 79 N.W.2d 733 (1956).

*Piechowski v. Case,* 255 N.W.2d 72, 75 (S.D. 1977). As our sister state of Nebraska has recently held:

The right to enforce restrictive covenants may be lost by waiver or acquiescence of violation of the same. However, the circumstances of each case control whether there has been such a waiver or acquiescence.

"The criteria for determining this includes whether those seeking to enforce the covenants had notice of the violation and the period of time in which no action was taken; the extent and kind of violation; the proximity of the violations to those who complain of them; any affirmative approval of the same; whether such violations are temporary or permanent in nature; and the amount of investment involved.

" 'As a rule, nonobjection to trivial breaches of a restrictive covenant does not result in loss of the right to enforce the covenant by injunction, and acquiescence in violations * * * which are immaterial and do not affect or injure one will not preclude him from restraining violations thereof which would so operate as to cause him to be damaged ....' 20 Am.Jur.2d, Covenants, Conditions, etc., § 274, p. 835." *Pool v. Denbeck,* 196 Neb. 27, 34, 241 N.W.2d 503, 507 (1976).

*Meierhenry v. Smith,* 208 Neb. 88, 90, 302 N.W.2d 365, 366 (1981).

Based upon the guidelines set forth in *Meierhenry,* we likewise hold that the right to enforce restrictive covenants may be lost. As applied to the facts of this case, we hold appellee Vaughn is free to enforce the covenant at issue. Appellee Vaughn has taken action to enforce material covenant violations as exhibited by his letter to the owners of Lot 17 and this litigation. Construction of the water reservoir on Lot 13 was done in compliance with Covenant number 4 allowing easements for utilities. The majority of Lot 13 is still available for a residential structure and the top of the reservoir could and should be easily backfilled. The reservoir benefited the Alice Subdivision through an agreement for fire protection and future water hookup. All other violations, while certainly

actionable, are insufficient to preclude enforcement of Covenant number 6.

Affirmed.

All the Justices concur.