#27298-rev & rem-DG
**2015 S.D. 83**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

VERA GOOD LANCE,                                    Plaintiff and Appellant,

v.

BLACK HILLS DIALYSIS, LLC,
and LEETTA BREWER,                                  Defendants and Appellees.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
SHANNON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT A. MANDEL
Judge

* * * *

JON J. LAFLEUR
CHARLES ABOUREZK of
Abourezk & Zephier, PC
Rapid City, South Dakota                            Attorneys for plaintiff and
                                                    appellant.


GREGORY J. BERNARD
CATHERINE L. Z. CHICOINE of
Thomas Braun Bernard & Burke, LLP
Rapid City, South Dakota                            Attorneys for defendants and
                                                    appellees.

* * * *

ARGUED OCTOBER 6, 2015
OPINION FILED **11/04/15**

#27298

GILBERTSON, Chief Justice

[¶1.] Vera Good Lance sued Black Hills Dialysis, LLC and LeEtta Brewer (collectively, BHD) for negligence after suffering an injury from a fall while at BHD's facility in Shannon County on the Pine Ridge Indian Reservation.[1] A dispute arose between the parties about whether the circuit court should summon jurors from Shannon County or neighboring Fall River County. A 2009 standing order issued by the Seventh Circuit Presiding Judge required that all cases filed in Shannon County be venued in Fall River County. In accordance with this order, the circuit court ruled that it would summon Fall River County jurors. Good Lance, through her estate's administrator Hilda Kills Small, requested this intermediate appeal. We reverse and remand for further proceedings.

**Background**

[¶2.] Good Lance was a resident of Shannon County, South Dakota. Shannon County is located completely within the boundaries of the Pine Ridge Indian Reservation. Good Lance was a regular patient at BHD's facility in Shannon County. During one of her regular dialysis treatments, Good Lance fell and suffered injuries that generated substantial medical expenses and required a nursing home stay. At the time of her fall, Good Lance was being assisted by BHD's employee, LeEtta Brewer. Good Lance commenced this action against BHD in Shannon County. Shortly after BHD deposed Good Lance, Good Lance died. Hilda Kills

---

1. We take judicial notice that in May of 2015 the name of Shannon County was changed to Oglala Lakota County. However, we refer to it as Shannon County because that was its name throughout the proceedings in the circuit court.

-1-

Small, the special administrator for Good Lance's estate, continued this action on behalf of the estate.

[¶3.]      Good Lance sued BHD in Shannon County for her injuries. However, Shannon County has no physical state court facilities. It contracts with neighboring Fall River County for its governmental services. Thus, all Shannon County legal proceedings are held at the Fall River County Courthouse in Hot Springs, South Dakota. Accordingly, all hearings in this matter took place at the Fall River County Courthouse.

[¶4.]      At a pre-trial hearing, the parties disputed whether the circuit court should summon jurors from Shannon County or Fall River County. The circuit court advised the parties that it intended to empanel Fall River County jurors, due to a standing order issued in 2009 by the Presiding Judge of the Seventh Circuit (hereafter, the standing order). The standing order stated that all Shannon County matters would be tried in Fall River County.[2] The standing order was issued in

---

2.     The relevant language of the order states:

> The Court, presiding Judge Jeff W. Davis, having reviewed applicable laws and procedures and being fully advised of the premise, now, based on factors allowing judicious administration of court services and resources does HEREBY ORDER: That the venue of all state judicial matters filed in Shannon County shall be tried in Fall River County in accordance with the laws and policies set out in South Dakota statutory authority, the Shannon/Fall River County Contract for governmental services and Oglala Sioux Tribe Proclamation and Executive Order declaring state court service and filings unenforceable on the Pine Ridge Indian Reservation. This Order allows consideration of the fact that a state court judge lacks jurisdiction in tribal court to summon and seat the jury panel and lacks the inherent authority to invoke statutory procedures necessary to ensure a fair trial. The Order further allows consideration of factors

(continued . . . )

response to an executive order issued by the President of the Oglala Sioux Tribe. The executive order stated that any service of process issued by a state court could not be enforced within the boundaries of the Pine Ridge Indian Reservation. Good Lance made a motion to summon Shannon County jurors and the parties briefed the issue.

[¶5.] At a subsequent hearing on the motion, BHD argued that a state court does not have jurisdiction over Indians within the boundaries of the reservation; therefore, the court would not have any method of compelling jurors to attend the trial. Thus, BHD argued that the court had no alternative but to use Fall River County jurors. Conversely, Good Lance argued that the issue was one of venue, and that venue was proper in Shannon County because the events giving rise to the claim occurred in Shannon County. Good Lance also argued that juror attendance could be successfully compelled under the United States Supreme Court's holding in *Nevada v. Hicks*, 533 U.S. 353, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001). Lastly, Good Lance argued that the standing order was unconstitutional under both the South Dakota Constitution and the United States Constitution.

[¶6.] The circuit court ruled that it would summon Fall River County jurors. The circuit court reasoned that under our interpretation of *Hicks*, the language in *Hicks* that indicates a state court could compel juror attendance was mere dicta, therefore not controlling. *See State v. Cummings*, 2004 S.D. 56, ¶ 16, 679 N.W.2d

(. . . continued)
affecting efficient administration of judicial resources such as time, cost and court services necessary to conduct a jury trial.

484, 489.[3] The circuit court further held that the standing order supported its resolution of the issue. The circuit court concluded that neither state nor federal case law would support it asserting the jurisdiction required to compel jurors from Shannon County. Good Lance appeals.

[¶7.]	The following issues are discussed in this appeal:

1.	Whether Good Lance has standing to contest the validity of the standing order.

2.	Whether the standing order violated South Dakota statutes or case law regarding venue.

3.	Whether the standing order violated the right to a fair and impartial jury under the South Dakota and United States Constitutions.

4.	Whether the circuit court would be able to compel juror attendance of Shannon County residents.

**Standard of Review**

[¶8.]	Good Lance argues that the standing order and the circuit court's interpretation of applicable case law replacing the Shannon County jury panel with a panel summoned from Fall River County violated her constitutional right to a fair and impartial jury. Good Lance also argues that the standing order was an unconstitutional judicial encroachment on the Legislature. We review alleged violations of constitutional rights de novo. *Stehly v. Davison Cty.*, 2011 S.D. 49, ¶ 7, 802 N.W.2d 897, 899 (*citing W. Two Rivers Ranch v. Pennington Cty.*, 2002 S.D. 107, ¶ 8, 650 N.W.2d 825, 827).

---

3.	*Hicks* does not affect our analysis in the disposition of this case. Thus, we do not address the parties' arguments about its applicability.

[¶9.] Good Lance also argues that the standing order violates South Dakota statutes governing venue and jury empaneling. The de novo standard of review also applies to issues of statutory construction. *See Apland v. Bd. of Equalization for Butte Cty., S.D.*, 2013 S.D. 33, ¶ 7, 830 N.W.2d 93, 97. (applying de novo standard of review to both questions of constitutional rights deprivations and issues of statutory interpretation). Under the de novo standard of review, no deference is given to the circuit court's conclusions of law. *Stehly*, 2011 S.D. 49, ¶ 7, 802 N.W.2d at 899.

## Decision

[¶10.] 1. *Whether Good Lance has standing to contest the validity of the standing order.*

[¶11.] BHD alleges that Good Lance does not have standing to contest the standing order because she did not employ the proper legal procedures for vacating the order. BHD argues that instead of seeking an intermediate appeal of the circuit court's order that Fall River County jurors would be summoned, Good Lance should have sought a writ of certiorari seeking to vacate the standing order. BHD also argues that Good Lance should have named then Presiding Judge Davis as a party to the lawsuit to have standing to contest his standing order. We disagree.

[¶12.] There are five requirements to establish standing. The party must allege:

> (1) a personal injury in fact, (2) a violation of his or her own, not a third-party's rights, (3) that the injury falls within the zone of interests protected by the constitutional guarantee involved, (4) that the injury is traceable to the challenged act, and (5) that the courts can grant redress for the injury.

*Sioux Falls Argus Leader v. Miller*, 2000 S.D. 63, ¶ 6, 610 N.W.2d 76, 80 (quoting

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,

454 U.S. 464, 472-74, 102 S. Ct. 752, 758-59, 70 L. Ed. 2d 700 (1982)). A judge's

action need not directly harm litigants for them to have suffered an injury

recognized for standing analysis. *See id.* ¶ 8, 610 N.W.2d at 81 (holding that a

judge's gag order on court members was a cognizable injury to the press for

standing purposes even though the order was not directed at the press).

Additionally, even if a party has not sustained an injury, the party may still have

standing if an injury is imminent and concrete. *See Cramp v. Bd. of Pub.*

*Instruction of Orange Cty., Fla.*, 368 U.S. 278, 282-83, 82 S. Ct. 275, 278, 7 L. Ed. 2d

285 (1961); *Doremus v. Bd. of Ed. of Borough of Hawthorne*, 342 U.S. 429, 434-35,

72 S. Ct. 394, 397, 96 L. Ed. 475 (1952).

[¶13.]     Good Lance clearly satisfied all five requirements for standing. The

injury, not having a fair and impartial jury of her peers, is clear and imminent, as

the circuit court's decision denied her from having a jury comprised of a cross

section of her community. *See* SDCL 16-13-10.1 (stating that it is the policy of

South Dakota that all litigants are entitled to have juries selected from a fair cross

section of the community). The injury is personal to her, not a third party, and it is

not a generalized grievance of the population. Her injury is also clearly within the

zone of interests protected by the right to a fair and impartial jury guaranteed by

the South Dakota Constitution. *See* S.D. Const. art. VI, § 6. The injury is clearly

the result of the standing order, as the standing order was crucial to the circuit

court's decision to use Fall River County jurors. We are also able to redress the

alleged injury by reversing the circuit court's decision and remanding with instructions to disregard the standing order. Thus, Good Lance satisfies all five elements of standing.

[¶14.]     BHD argues that Good Lance should have sought a writ of certiorari under SDCL 21-31-1 (authorizing writ) and SDCL 21-31-2 (delineating application procedure) if she wanted to vacate the standing order. However, a writ of certiorari is an equitable remedy, and an equitable remedy is only available when there is no remedy at law that could address the problem. *Ridley v. Lawrence Cty. Comm'n*, 2000 S.D. 143, ¶ 6, 619 N.W.2d 254, 257. We have already granted Good Lance's petition for intermediate appeal under SDCL 15-26A-13, so Good Lance has an adequate remedy at law. Additionally, SDCL Chapter 21-31 does not make a writ of certiorari an exclusive remedy. Therefore, even if Good Lance could have sought a writ of certiorari, that option did not preclude her from pursuing an intermediate appeal. We hold that Good Lance has standing to pursue this appeal.[4]

[¶15.]     2.     *Whether the standing order violates South Dakota statutes or case law regarding venue.*

[¶16.]     We now consider the propriety of the standing order in the context of South Dakota statutes and case law regarding venue. We first analyze whether the standing order violated South Dakota law regarding venue. We then address the

---

4.     Many of our cases discussing certiorari and its exclusivity requirement predate the Court Rule prescribing the method for taking intermediate appeals. However, since an intermediate appeal is a matter of this Court's judicial discretion, application for it is not a prerequisite to obtaining a writ of certiorari in an appropriate case.

circuit court's holding that effectively placed the burden on the plaintiff to justify venue.

> a. *Whether the standing order is consistent with South Dakota law regarding venue.*

[¶17.] In South Dakota, statutes govern venue. "Actions for conversion of personal property, or for the recovery of damages to persons or property, may at the option of the plaintiff be brought and tried in the county where the damages were inflicted or the cause of action arose." SDCL 15-5-8. Our statutes also mandate that an action will be tried in the county where the plaintiff files suit, even if the county is improper, if the defendant does not timely request a change of venue. SDCL 15-5-10. We have held that "[v]enue in the courts of this state is entirely statutory. In the absence of statutory grounds for a change, the initial choice of a plaintiff is conclusive." *Putnam Ranches, Inc. v. O'Neill Prod. Credit Ass'n*, 271 N.W.2d 856, 859 (S.D. 1978).

[¶18.] In light of these holdings and statutes, the presiding judge had no authority to effectively change venue in this manner. The standing order clearly went beyond the confines of the presiding judge's statutory authority. Whatever the reasons for the order, his authority does not include the power to effectively change the venue of all properly venued Shannon County cases.

[¶19.] BHD argues that the standing order was allowed under SDCL 16-13-37. This statute requires presiding circuit court judges to prescribe the "manner" in

which jury panels are to be summoned and utilized for trials in each county.[5] However, determining the manner in which jury panels are used and how they are to be summoned does not mean the presiding judge can choose from which counties to empanel jurors, broadly excluding all the residents of an entire South Dakota county from the opportunity to serve on a jury. *See* SDCL 16-13-10.1 ("It is further the policy of the State of South Dakota that all citizens of the state, qualified for jury duty, shall have the opportunity to be considered for service on grand and petit juries[.]"). The possibility of juror noncompliance does not justify changing the county from which the jurors are empaneled. *See Nebraska Elec. Generation & Transmission Co-op., Inc. v. Markus*, 90 S.D. 238, 244, 241 N.W.2d 142, 146 n.2 (1976) (noting that it would be improper to use residents from an organized county as jurors in a matter properly brought in an unorganized county). The language of SDCL 16-13-37 is not so broad as to give presiding circuit court judges the authority to alter the venue procedures that our Legislature properly put into place.

[¶20.] Even if we were to conclude that a presiding judge had this authority, the standing order would still be invalid under other provisions of SDCL chapter 16-13. A presiding circuit court judge has authority to prescribe the manner in which jury panels are utilized, and circuit courts are free to make local rules to suit their

---

5.    Respondents do not cite it, but SDCL 16-2-21 sets forth the general duties and authority for a circuit's presiding judge. The language of this statute allows presiding judges to make "arrangements with proper authorities for the drawing of jury panels and determining which sessions shall be jury sessions[.]" As with SDCL 16-13-37, the language of this statute does not extend so far as to allow a presiding judge to exclude an entire county's population from jury panels.

needs. *See Stormo v. Strong*, 469 N.W.2d 816, 823 (S.D. 1991) (holding that circuits can make local rules and that such rules should be followed). However, it is the responsibility of this Court to enforce SDCL chapter 16-13's provisions regarding juries. SDCL 16-13-18.2. If a circuit court wishes to change its procedures regarding jury selection, it must submit its proposed change for this Court's approval. SDCL 16-13-18.3.[6] A circuit court also must have this Court's approval to change any of its local procedural rules. *See* SDCL 15-6-83 (requiring this Court's approval for any change to any circuit court's local rules). No indication of such approval occurs anywhere in the record of this case or the records of this Court. Thus, even if we were to hold that such a drastic change to venue rules were permitted under SDCL 16-13-37, the standing order would still be invalid because the change was entered in violation of SDCL 16-13-18.3 and SDCL 15-16-83.

[¶21.]     As the standing order infringed on venue statutes, it also infringed on the Legislature's role of creating venue law, a violation of the South Dakota Constitution. S.D. Const. art. II ("The powers of the government of the state are divided into three distinct departments, the legislative, executive and judicial; and the powers and duties of each are prescribed by this Constitution."). "The doctrine

---

6.     The statute reads as follows:

> The presiding judge of each circuit shall administer and enforce the jury selection provisions of this chapter. Such judge may vary the terms of the random selection process to meet local conditions in any county or jury district in the circuit if such changes are consistent with the terms of this chapter. Such changes shall be reduced to writing, approved by the Supreme Court pursuant to § 16-13-18.2 and filed with the clerk of the court in any county affected by the changes with the other materials required to be preserved by § 16-13-31.1.

of separation of powers has been a fundamental bedrock to the successful operation of our state government since South Dakota became a state in 1889." *Gray v. Gienapp*, 2007 S.D. 12, ¶19, 727 N.W.2d 808, 812. We have held that courts in South Dakota must avoid judicial legislation, which is a usurpation of the legislature's power. *AEG Processing Ctr. No. 58, Inc. v. S.D. Dep't of Revenue & Regulation*, 2013 S.D. 75, ¶ 19, 838 N.W.2d 843, 849 (*quoting Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 884 (S.D. 1984)).

[¶22.]     Other courts have recognized the role of their respective legislatures in determining venue law. The United States Supreme Court has held that its power to regulate procedure in the federal courts does not trump valid venue statutes passed by Congress. *United States v. Nat'l City Lines*, 334 U.S. 573, 588-89, 68 S. Ct. 1169, 1177-78, 92 L. Ed. 1584 (1948). States have followed suit, holding that altering venue is within the exclusive realm of the legislature. *See State ex rel. Riffle v. Ranson*, 464 S.E.2d 763, 768 (W. Va. 1995) ("To be clear, the West Virginia Legislature is the paramount authority for deciding and resolving policy issues pertaining to venue matters"); *State ex rel. Wade v. Cass Circuit Court*, 447 N.E.2d 1082, 1083 (Ind. 1983) ("[T]he right to a change of venue from the county or judge is a substantive right which can be conferred only by the legislature.").

[¶23.]     It is clear in this case that the standing order was not within the presiding judge's statutory authority. A court's power to control procedure does not extend so far as to prevent a plaintiff from having a jury from her home county decide her case. Only the South Dakota Legislature could change our venue

statutes. The standing order was an unconstitutional judicial encroachment on the powers of the South Dakota Legislature.

> b. *Whether the circuit court effectively forced Good Lance, rather than BHD, to justify venue in desired county.*

[¶24.] A plaintiff's choice of where to file suit is conclusive absent a venue transfer request by the defendant. *Putnam Ranches, Inc.*, 271 N.W.2d at 859; *see also* SDCL 15-5-10 (stating that a trial may be held in an improper county if defendant fails to request a change). While it is correct that either party may move for a change in venue, the burden is on the party that wants a change in venue to show why venue is improper. *See Olson v. City of Sioux Falls*, 63 S.D. 563, 262 N.W. 85, 87-88 (illustrating that either party may move for a change in venue); *Estes v. Lonbaken*, 2011 S.D. 52, ¶ 14, 803 N.W.2d 609, 612 ("Accordingly, the party raising the issue has the burden of proving improper venue.")

[¶25.] In this case, Good Lance filed suit in Shannon County. We acknowledge that all the proceedings in this case have been held at the Fall River County Courthouse, but that is due to the contract between the counties. The counties remain separate legal entities. Shannon County's decision to contract out its obligation to provide a physical location to hold court proceedings did not take away Good Lance's right to choose appropriate venue in her home county, where the events giving rise to the litigation took place. *See* SDCL 15-5-8 ("Actions . . . for the recovery of damages to persons or property, may *at the option of the plaintiff* be brought and tried in the county where the damages were inflicted[.]") (Emphasis added.) Despite these statutes, the circuit court erroneously placed the burden on Good Lance to justify using Shannon County jurors; the court required Good Lance

to make the motion and provide factual and legal support. If BHD had a problem with the Shannon County jury pool, it was BHD's burden to make and support a motion for a change in venue to Fall River County. *See Markus*, 90 S.D. at 245, 241 N.W.2d at 146 ("we are not persuaded that the appellant has met its burden of proof that prejudice resulted"); *State v. Aesoph*, 2002 S.D. 71, ¶ 45, 647 N.W.2d 743, 758 (holding that criminal defendant did not meet his burden of proof that jury selection process violated his due process rights). Without a motion from BHD to change venue, Good Lance's choice of venue was presumptively conclusive, and it was not her burden to justify her statutory right to her choice of venue.

[¶26.] BHD argues that it will be unable to receive a fair and impartial trial if the court empanels Shannon County jurors. BHD argues that because a high percentage of Shannon County residents are members of the Oglala Sioux Tribe and residents of the Pine Ridge Reservation, the circuit court has no jurisdiction to compel attendance of those persons summoned for jury duty. BHD believes that because of the court's inability to compel attendance, the only people that will show up for jury selection are those that will have an interest in the matter. BHD argues that such a cross-section of the community would deny it a fair trial. The correctness of this contention is a premature issue as BHD has not attempted to factually establish juror bias. To proceed on such a contention, BHD must provide factual support for the proposition that a fair cross-section of Shannon County residents will not attend jury selection.[7] We have previously indicated that voir

---

7. Good Lance cites several cases that were tried prior to the issuance of the standing order that took place at the Fall River County Courthouse but

(continued . . . )

dire is the proper procedure for determining the bias of prospective jurors. *See generally City of Sioux Falls v. Johnson*, 1999 S.D. 16, ¶ 37, 588 N.W.2d 904, 912 (holding that voir dire was the proper mechanism determining public hostility). BHD cannot now argue for what amounts to a change in venue with only speculations of possible negative consequences.

[¶27.]    BHD relies on *State v. Blem*, 2000 S.D. 69, 610 N.W.2d 803. In *Blem*, we held that structural errors in jury selection procedures deny a party his right to a fair and impartial jury. *Id.* ¶¶ 29-30, 610 N.W.2d at 810. However, *Blem* is distinguishable. In *Blem*, the defendant appealed after trial because the court had removed two potential jurors before examination by the parties was possible. *Id.* ¶ 19, 610 N.W.2d at 807-08. In this case, no defect that could lead to structural error has occurred, as trial has not yet taken place. BHD cannot claim a structural defect has deprived it of its right to a fair and impartial jury before the jury panels are selected, the jurors are summoned, and jurors are questioned during voir dire. To claim this type of structural error, BHD must develop a record indicating juror bias during voir dire.

[¶28.]    Even if we were to hold that *Blem* were applicable in this case, it would not support BHD's argument. We held that there was a structural defect in *Blem* because jurors were improperly eliminated from consideration prior to voir dire. *Id.*

---

(. . . continued)

empaneled Shannon County jurors. *State v. Jensen*, 2007 S.D. 76, 737 N.W.2d 285; *State v. Finney*, 337 N.W.2d 167, 168 (S.D. 1983); *Estate of He Crow by He Crow v. Jensen*, 494 N.W.2d 186, 187 (S.D. 1992). These cases cast even more doubt on BHD's concerns about a fair and impartial trial, as they demonstrate that jury trials have been successful empaneling Shannon County jurors.

¶ 30, 610 N.W.2d at 810 ("Here, there was a substantial failure to comply with jury selection statutes because no examination of the prospective jurors was conducted prior to their removal."). If we were to hold for BHD in this case and affirm the circuit court, we would be enabling the same structural defect to occur—premature elimination of potential jurors. However, instead of prematurely eliminating just two potential jurors from consideration, as was the case in *Blem*, it would be the entire population of Shannon County. The circuit court's ruling, effectively prohibiting the entire population of a South Dakota county from participating in their civic right to be a juror, is a structural defect we cannot allow.

[¶29.] Based on the above analysis, the circuit court's ruling on venue is improper and without legal basis. Additionally, the circuit court erred in placing the burden on Good Lance to justify venue in Shannon County. Shannon County is where the injury occurred, the cause of action arose, and where Good Lance filed her suit. Good Lance is entitled to have Shannon County jurors hear her case until BHD can prove it is entitled to a statutory change.

[¶30.] 3. *Whether the standing order violated the right to a fair and impartial jury under the South Dakota and United States Constitutions.*

[¶31.] Both parties argue that their constitutional rights were violated or would be violated if we were to hold against them. However, our holding today disposes of this case without requiring any further constitutional analysis. Thus, we decline to address the parties' constitutional arguments. *See In re Estate of Flaws*, 2012 S.D. 3, ¶ 22, 811 N.W.2d 749, 755 (holding that addressing

constitutional issues is unnecessary when the case is disposed of on other grounds (citing *Sheehan v. United Pac. Ins. Co.*, 439 N.W.2d 117, 119 (S.D. 1989))).

[¶32.]      4.      *Whether the circuit court would be able to compel juror attendance of Shannon County residents.*

[¶33.]      The parties have extensively briefed the question of the circuit court's ability to compel the attendance of members of the Oglala Sioux Tribe who reside on the Pine Ridge Reservation. However, BHD has presented only generalized assumptions as evidence as to why this will be an issue. Concerns BHD has about an unfair jury cannot be addressed until a jury is actually empaneled and voir dire has taken place. The panel cannot be exhausted, invoking SDCL 16-13-43, prior to it even being summoned. As such, we decline to address the parties' arguments about the ability of the circuit court to compel juror attendance.

**Conclusion**

[¶34.]      We hold that the presiding judge exceeded his statutory and constitutional authority in issuing the standing order effectively changing venue in all Shannon County cases. The circuit court also erred in its analysis reaching the same conclusion of exclusion of a Shannon County jury panel. For these reasons, we vacate the presiding judge's standing order and reverse the order of the circuit court. In this case, venue is proper in Shannon County, and Shannon County jurors should be summoned and empaneled.

[¶35.]      ZINTER, SEVERSON, WILBUR, Justices, and KONENKAMP, Retired Justice, concur.

[¶36.]      KONENKAMP, Retired Justice, sitting for KERN, Justice, disqualified.