#30180-a-SPM
**2025 S.D. 12**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ROBERT and MELISSA HOOD,
THOMAS and PATRICIA DONOVAN,
BERNARD and MARIA JUNG, WILLIAM
and JANICE PRICE, JAMES and KAY
FENENGA, LARRY and DARLENE
BAILLY, GREG and DEB PETERS, MARK
and KITTY GUSTAF, and RODNEY and
GINA BROADWIRE,                                    Plaintiffs and Appellants,

         v.

CLYDE STRAATMEYER and NANCY
STRAATMEYER,                                        Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE KEVIN KRULL
Judge

\* \* \* \*

COURTNEY R. CLAYBORNE of
Clayborne, Loos & Sabers, LLP
Rapid City, South Dakota                    Attorneys for plaintiffs and
                                            appellants.


TALBOT J. WIECZOREK
KEELY M. KLEVEN of
Gunderson, Palmer, Nelson
   & Ashmore, LLP
Rapid City, South Dakota                    Attorneys for defendants and
                                            appellees.

\* \* \* \*

                                            ARGUED
                                            NOVEMBER 8, 2023
                                            OPINION FILED **03/05/25**

#30180

MYREN, Justice

[¶1.]        Clyde and Nancy Straatmeyer bought a lot within a subdivision subject to a restrictive covenant.  Their neighbors sued to enjoin them from constructing a house and a large three-car garage.  The Straatmeyers counterclaimed, seeking an order declaring the covenant void.  After a bench trial, the circuit court declared the covenant null and void.  We affirm.

## Factual and Procedural History

[¶2.]        Shadowland Ranch is a subdivision with multiple lots and several different lot owners.  The subdivision is subject to a restrictive covenant from 1976 that provides, in part:

> A. There shall be only one single-family dwelling per lot with no larger than a three-car garage.
> B. The main level of each dwelling constructed shall be a minimum of Twelve Hundred (1,200) square feet.  No trailers or modulars.
> C. The lot shall be used for residential purposes only, and lot owners shall conduct no business activities which shall require extra parking facilities or which shall result in any materials being stored outside any dwelling or which shall in any other way interfere with the peaceful enjoyment of the premises by other lot owners.
> D. Further subdivisions of any lot shall be prohibited.
>   . . .
> F. The outside appearance of the house being constructed on any lot must be fully completed within one (1) year after the beginning of construction.
>   . . .
> H. No building shall be constructed so that any part of said building is within forty (40) feet of the boundary of said lot.

The covenant was filed with the Meade County Register of Deeds.

[¶3.]        In autumn of 2020, the owner of Lot 6 of the subdivision successfully applied to the City of Summerset to subdivide Lot 6 into Lot 6A and 6B.  Following

the subdivision of Lot 6, the Straatmeyers purchased Lot 6B. The Straatmeyers hired a contractor who began the foundation for a home with an attached three-car garage that could contain a recreational vehicle (RV). Their neighbors sent them a letter that said the project violated the covenant. Ultimately, 18 of their neighbors filed suit seeking a declaratory judgment that the covenant was "valid and applicable and to further prevent the proposed construction contemplated by [the Straatmeyers]." The neighbors sought (1) an order declaring the Straatmeyers' subdivision was a violation of the restrictive covenant, (2) an order declaring the Straatmeyers' construction was a violation of the restrictive covenant, (3) an order directing Straatmeyers to remove the construction from their lot, and (4) costs and attorney fees.[1]

[¶4.]     The Straatmeyers answered the complaint and raised various affirmative defenses (including waiver/estoppel, laches, and unclean hands). They also asserted a counterclaim that the Plaintiffs had "allowed to exist for a number of years activity within the subdivision that would constitute a violation of the covenants." They requested a declaratory judgment that the covenant "should be declared null and void as selective enforcement of the covenants would be inequitable." Alternatively, if the circuit court determined that the covenant was

---

1.     The circuit court found that the Plaintiffs failed to timely object to the division of Lot 6 into Lot 6A and 6B at the time it was subdivided and then determined there was "no legal remedy by which Plaintiffs can seek to un-subdivide property that was divided and sold to two separate owners." The court determined that the challenge to the subdivision was an improper collateral attack on the "quasi-judicial proceeding undertaken by the City of Summerset." Plaintiffs have not challenged this determination on appeal.

valid, they requested the circuit court to order all Plaintiffs to bring their properties into compliance with the covenant.

[¶5.]    The case proceeded to a bench trial at which seven witnesses testified. In its decision following the hearing, the circuit court recognized that "[e]quitable principles govern the enforcement of building restrictions." The circuit court concluded it would be inequitable to enforce the covenant because it had never been previously enforced despite numerous violations. It declared the covenant null and void and entered findings, conclusions, and a judgment to that effect. The Plaintiffs appeal.

### Decision

### 1.    *Whether the circuit court erred in its interpretations of the covenant's terms.*

[¶6.]    "A covenant is a contract between the governing authority and individual lot owners." *Countryside S. Homeowners Ass'n, Inc. v. Nedved*, 2007 S.D. 70, ¶ 11, 737 N.W.2d 280, 283 (citation omitted). "It 'represents a meeting of the minds and results in a relationship that is not subject to overreaching by one party or sweeping subsequent change.'" *Id.* (citation omitted). "When interpreting the terms of a restrictive covenant, we use the same rules of construction applicable to contract interpretation." *Halls v. White*, 2006 S.D. 47, ¶ 7, 715 N.W.2d 577, 580. "A term is ambiguous if it is reasonably capable of being understood in more than one sense." *Id.* (citation omitted).

[¶7.]    "The interpretation of a covenant is a legal question which we review de novo." *Id.* ¶ 4, 715 N.W.2d at 579 (citation omitted). "Equitable determinations, however, are reviewed only for abuse of discretion." *Id.* at 579−80 (citing *Adrian v.*

*McKinnie*, 2002 S.D. 10, ¶ 9, 639 N.W.2d 529, 533). "An abuse of discretion is 'a fundamental error of judgment, a choice outside the reasonable range of permissible choices, a decision . . . [that], on full consideration, is arbitrary or unreasonable.'" *Coester v. Waubay Twp.*, 2018 S.D. 24, ¶ 7, 909 N.W.2d 709, 711 (alteration and omission in original) (quoting *Wald, Inc. v. Stanley*, 2005 S.D. 112, ¶ 8, 706 N.W.2d 626, 629). "Under the de novo standard of review, no deference is given to the circuit court's conclusions of law." *Hauck v. Clay Cnty. Comm'n*, 2023 S.D. 43, ¶ 6, 994 N.W.2d 707, 710 (quoting *Good Lance v. Black Hills Dialysis, LLC*, 2015 S.D. 83, ¶ 9, 871 N.W.2d 639, 643).

[¶8.]     The circuit court determined that the terms of the covenant had been routinely violated. The Plaintiffs disagree with several interpretations the circuit court made: (a) that detached garages were counted toward the "three-car garage" limit; (b) that the "boundary of said lot" is the lot line; (c) that sheds and other movable property located within 40 feet of the boundary constituted "buildings" that are covered by the covenant; and (d) that lot owners conducted business on their property in violation of the covenant.

> a.     *the circuit court's interpretation of the "three-car garage" limitation in the covenant.*

[¶9.]     The covenant provides: "There shall be only one single-family dwelling per lot with no larger than a three-car garage." "Three-car garage" suggests a garage that can hold three vehicles but does not reference the size of the garage or cars. The covenant does not define "car." Where there is an ambiguity in the meaning of a term, the court can resort to extrinsic evidence of that meaning. *See LaMore Rest. Grp., LLC v. Akers*, 2008 S.D. 32, ¶ 12, 748 N.W.2d 756, 761. When

viewing extrinsic evidence of a restrictive covenant, "the real intention of the parties, particularly that of the grantor, should be sought and carried out whenever possible." *Prairie Hills Water & Dev. Co. v. Gross*, 2002 S.D. 133, ¶ 26, 653 N.W.2d 745, 751–52 (quoting *Nw. Pub. Serv. Co. v. Chicago & N.W. Ry. Co.*, 87 S.D. 480, 484, 210 N.W.2d 158, 160 (1973)).

[¶10.]     The circuit court heard testimony from Eddie Opstedal, who created the subdivision and executed the restrictive covenant in 1976. He testified that the "three-car garage" provision was not intended to be limited to garages attached to a dwelling but included detached garages. Opstedal also agreed that having two different two-car garages on the lot would violate the covenant. He testified that some garages can be large and others can be small.

[¶11.]     Utilizing this extrinsic evidence, the circuit court determined the three-car garage limitation applied to all attached and detached garages on a lot. The circuit court determined that the Straatmeyers' three-stall garage would not violate the covenant. Using the same interpretation, the circuit court found that many of the Plaintiffs had violated that covenant provision. The circuit court correctly interpreted this provision, and its factual findings are not clearly erroneous.

> b.     *the circuit court's interpretation of the term "boundary of said lot" as used in the covenant.*

[¶12.]     The covenant provides: "No building shall be constructed so that any part of said building is within forty (40) feet of the boundary of said lot." Plaintiffs argue that the "boundary of said lot" is not the lot line but is the line at the halfway point of the publicly dedicated road adjacent to each lot. The evidence established

that the roads within the subdivision are dedicated to public use but privately maintained. Each lot owner is responsible for maintaining their share of the road.

[¶13.] The circuit court concluded that the term "boundary of said lot" was not ambiguous and had a "legal, distinct meaning." It concluded that the lots "do not include roadways and the lots are established and not ambiguous." The circuit court determined that the Straatmeyers' proposed garage would be within 40 feet of the lot lines and would violate the covenant. The circuit court found that numerous other structures existed within the development which violated this provision. The circuit court correctly interpreted this provision, and its factual findings are not clearly erroneous.

> c. *the circuit court's interpretation of what constituted a building under the terms of the covenant.*

[¶14.] Plaintiffs argue the circuit court was incorrect in finding that some of them had violated the "boundary of said lot" provision in the covenant. They contend that some structures referenced by the circuit court do not constitute "buildings." Specifically, Plaintiffs argue that "sheds and other movable property" do not count as buildings. This argument only relates to some of the structures the circuit court considered. However, the Plaintiffs do not dispute that several buildings within the subdivision violate the boundary limitations imposed by the covenants. The circuit court correctly interpreted this provision, and its findings are not clearly erroneous.

> d. *the circuit court's interpretation of the provision that prohibited business activities on covenanted property.*

[¶15.] The covenant stated, "The lot shall be used for residential purposes only, and lot owners shall conduct no business activities which shall require extra parking facilities or which shall result in any materials being stored outside any dwelling or which shall in any other way interfere with the peaceful enjoyment of the premises by other lot owners."

[¶16.] Plaintiff Peters testified that he has a home business and admitted he brought leftover materials from his contracting job to his lot. The circuit court determined that Peters violated the covenant because his "business activities . . . resulted in materials being stored outside."

[¶17.] Plaintiff Boadwire testified he owns and operates a tree-cutting business. He testified that his employees "can park anywhere they want, just out of the way." Boadwire also testified that he periodically adds gravel to the roundabout behind his house. Boadwire testified that he keeps several vehicles for his business outside his house: "a bucket truck, a chipper, a dump trailer, a pickup and a skid steer." The circuit court found: "On the lot Boadwire has employees park in grassy areas and also has parked equipment on the lot. Gravel has been added to the lot for a turnaround. Boadwire has his employees drive in every day and get equipment, trucks and commercial trucks used for his business, and leave with those trucks and then return at the end of the day."

[¶18.] The Plaintiffs contend the circuit court incorrectly interpreted the covenant when it determined that this conduct violated the prohibition on storing

materials related to business activities.  The circuit court's findings are not clearly erroneous, and it did not err in interpreting or applying this provision.

> **2.    Whether the circuit court abused its equitable discretion when it declared the covenant null and void.**

[¶19.]    Plaintiffs sought an order enjoining the Straatmeyers from constructing their garage.  The Straatmeyers counterclaimed seeking an order declaring the covenant null and void.  They asserted that enforcing the covenant would be inequitable because the covenant had never been enforced despite numerous prior violations.

[¶20.]    "The right to enforce [a] restrictive covenant[] may be lost by waiver or acquiescence of violation of the same."  *Vaughn v. Eggleston*, 334 N.W.2d 870, 873 (S.D. 1983) (quoting *Meierhenry v. Smith*, 302 N.W.2d 365, 366 (Neb. 1981)).  "The doctrine of waiver is applicable where one in possession of any right, whether conferred by law or by contract, and with a full knowledge of the material facts, does or forebears the doing of something inconsistent with the exercise of the right.  To support the defense of waiver, there must be a showing of a clear, unequivocal and decisive act or acts showing an intention to relinquish the existing right."  *Hammerquist v. Warburton*, 458 N.W.2d 773, 778 (S.D. 1990) (citing *Subsurfco, Inc. v. B–Y Water Dist.*, 337 N.W.2d 448, 456 (S.D. 1983)).

[¶21.]    The circuit court found "pervasive violations" of the terms of the covenant across the subdivision.  These findings are not clearly erroneous.  It also

found that "[n]o one has any record of anyone attempting to enforce the covenants since their recording in 1976."[2]

[¶22.] Based on those findings, the circuit court explained that "[a]llowing homeowners within a subdivision to selectively enforce the covenant against some property owners or new property owners that move in while allowing property owners who have been there longer to maintain covenant violations would be inequitable and unjust." It concluded:

> The covenants are not enforceable given the pervasive violations that have gone unchecked or unenforced by the Plaintiffs or any other parties that may have had the right under the covenants to enforce said violations. If the court were to order strict adherence to the covenants, it would have to order strict adherence to the covenants among all parties and order the removal of all offending structures, which would cause more significant harm to all parties. Getting all the homes in the subdivision to comply with the covenants is impractical and would harm all parties. Therefore, enforcement of the covenants against any of the parties would be inequitable at this point, given the pervasive violations throughout the subdivision.

[¶23.] Based on that equitable determination, the circuit court entered a judgment declaring the "enforcement of the covenants . . . is hereby permanently enjoined. The Covenants may not be enforced against any of the parties. The covenants shall be considered void and terminated through inactions of the parties and the failure to enforce said covenants[.]"

[¶24.] "Our standard of review for cases in equity is abuse of discretion." *Lien v. Lien*, 2004 S.D. 8, ¶ 14, 674 N.W.2d 816, 822 (citation omitted). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the reasonable

---

2. The parties have not disputed this finding.

range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable.'" *Stern Oil Co., Inc. v. Brown*, 2018 S.D. 15, ¶ 46, 908 N.W.2d 144, 157 (citation omitted).

[¶25.]       We have previously explained that "[w]hile a [circuit] court has broad discretion in fashioning an equitable remedy, . . . '[t]o say that a decision is discretionary is not to mean that it is unguided.'" *Lien*, 2004 S.D. 8, ¶ 27 n.3, 674 N.W.2d at 825 n.3 (third alteration in original) (quoting *Adrian*, 2002 S.D. 10, ¶ 10, 639 N.W.2d at 533).  Rather, the nature of our review is as described in *Adrian*:

> If facts plainly exist to warrant equitable relief and no facts exist to disentitle a party to such relief, then a court is not free simply to ignore the remedy in the name of discretion. Consistency and fairness require courts to decide similar cases similarly.  It follows that when a court gives reasons for its exercise of discretion, we will of course review those reasons with some deference.  However, when a court gives no justification for its exercise of discretion, then, of necessity, our review broadens.  We will examine the record to see whether reasons and facts exist to support or refute the court's discretionary choice.

2002 S.D. 10, ¶ 10, 639 N.W.2d at 533.

[¶26.]       This Court has, on two prior occasions, addressed the concept of waiver of a restrictive covenant.  *Vaughn*, 334 N.W.2d at 873; *Hammerquist*, 458 N.W.2d at 778–79.  Those two cases involved claims that parties to the lawsuit had waived their right to enforce the terms of a covenant.  *Vaughn*, 334 N.W.2d at 873; *Hammerquist*, 458 N.W.2d at 778.  They did not examine the court's ability to declare a covenant to be entirely unenforceable by all property owners subject to the covenant.

[¶27.]     Courts from other jurisdictions have determined that it is within the equitable power of courts to declare a restrictive covenant unenforceable when the actions of property owners subject to the covenant suggest they have abandoned them or that enforcement of the covenant would be inequitable. *See Shippan Point Ass'n, Inc. v. McManus*, 641 A.2d 144, 147 (Conn. App. Ct. 1994) (explaining that when "the circumstances show an abandonment of the original restriction making enforcement inequitable[,]" a court may declare a covenant unenforceable); *Davis v. Canyon Creek Ests. Homeowners Ass'n*, 350 S.W.3d 301, 309 (Tex. App. 2011) ("It has long been the law in [Texas] that a court may nullify or void a restrictive covenant . . . when the party seeking to nullify or modify the restriction proves . . . the property owners have acquiesced in violations of the residential restriction so as to amount to an abandonment of the covenant[.]"); *Landen Farm Cmty. Servs. Ass'n., Inc. v. Schube*, 604 N.E.2d 235, 238 (Ohio Ct. App. 1992) (explaining that in Ohio, the "test is whether in view of what has happened there is still a substantial value in the restriction, which is to be protected").

[¶28.]     Although this Court has not reviewed this form of equitable relief on similar facts, it has previously declared a restrictive covenant void for other reasons. *See Countryside S. Homeowners Ass'n*, 2007 S.D. 70, ¶ 16, 737 N.W.2d at 284–85 (reversing an order of the circuit court that determined a restrictive covenant was valid when it was not adopted in accordance with the governing instrument). Additionally, SDCL 21-13-1 provides: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause injury to a person against whom it is void or voidable, may upon his

application, be so adjudged and ordered to be delivered up or canceled[.]" "[A circuit] court has broad discretion in fashioning an equitable remedy[.]" *Lien*, 2004 S.D. 8, ¶ 27 n.3, 674 N.W.2d at 825 n.3 (citation omitted). Accordingly, it is within the equitable power of a circuit court to declare a covenant void upon a showing that enforcement of the covenant would be inequitable in light of widespread, unchallenged violations which undermine the purpose of the covenant.

[¶29.] Here, the circuit court did not abuse its discretion when it declared the restrictive covenant void. When it fashioned this remedy, the circuit court considered the equities among the parties, as well as other property owners in the subdivision. In doing so, it noted that there were widespread, unchallenged violations of the restrictive covenant throughout the subdivision, some of which were perpetrated by the Plaintiffs. The circuit court determined it would be impractical and harmful to require all properties to be brought into compliance with the covenant. Guided by these considerations, the circuit court determined that requiring the Straatmeyers to conform their use of their property to the restrictive covenant while allowing the Plaintiffs and other property owners to violate it would be inequitable. To avoid this inequitable result, the circuit court determined that voiding the covenant was an appropriate remedy. A review of the circuit court's memorandum decision reveals that it was guided by the facts before it, that it properly considered the equities among the parties, and that it gave reasons for its decision. The circuit court did not abuse its discretion when it declared the covenant void. We affirm.

#30180

[¶30.]      JENSEN, Chief Justice, and SALTER and DEVANEY, Justices, and RANK, Circuit Court Judge, concur.

[¶31.]      RANK, Circuit Court Judge, sitting for KERN, Justice, who deemed herself disqualified and did not participate.

-13-