#25930-rev & rem-DG

**2012 S.D. 3**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF THE
ESTATE OF
LORRAINE ISBURG FLAWS, DECEASED.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE FIRST JUDICIAL CIRCUIT
BRULE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE BRUCE V. ANDERSON
Judge

\* \* \* \*

DAVID J. LARSON
Chamberlain, South Dakota

and

JONATHAN K. VAN PATTEN
Vermillion, South Dakota                    Attorneys for Appellant
                                            Yvette Herman.

ROBERT R. SCHAUB of
Sundall, Schaub & Fox, PC
Chamberlain, South Dakota

and

PAUL O. GODTLAND
Chamberlain, South Dakota                   Attorneys for Appellees
                                            Audrey Courser and
                                            Clinton Baker.

\* \* \* \*

                                            CONSIDERED ON BRIEFS
                                            ON NOVEMBER 14, 2011

                                            OPINION FILED **01/25/12**

#25930

GILBERTSON, Chief Justice

[¶1.] Yvette Herman (Yvette) appeals a partial summary judgment for certain heirs of the estate of Lorraine Isburg Flaws (Lorraine) determining that Yvette does not have standing to maintain her claim that she is an heir of the estate. We reverse and remand.

**Facts**

[¶2.] Lorraine died testate on February 18, 2010. However, Lorraine was predeceased by her named beneficiaries and her will did not designate contingent beneficiaries.[1] Thus, administration of Lorraine's estate was governed by the laws of intestate succession.

[¶3.] Lorraine was also predeceased by her parents and her only sibling, Donald Isburg (Donald). Donald died in 1979. His estate was probated by the United States Department of the Interior, Bureau of Indian Affairs, Office of Hearings and Appeals, the office that completes probate matters for Native Americans who reside in Indian Country. Donald had two children from his marriage, Audrey Courser (Audrey) and Clinton Baker (Clinton). Donald's probate was completed in 1981 and an order determining heirs in that proceeding determined that Audrey and Clinton were Donald's sole heirs.

[¶4.] Yvette was born in 1970 to Joyzelle Rilling (Joyzelle). At the time Yvette was conceived, Joyzelle was married to Gene Rilling (Gene). However, Joyzelle divorced Gene a month before Yvette's birth. Joyzelle provided a sworn

---

1. Lorraine's named beneficiaries were her husband and her only child.

statement in the trial court proceedings in this matter that Donald was Yvette's biological father.

[¶5.] In 2005, Yvette contacted Lorraine about her claim that Donald was her father. At Yvette's request, Lorraine submitted to DNA testing to determine Donald's paternity of Yvette. The testing concluded that there was a 94.82% probability that Donald was Yvette's father. Yvette then petitioned the Crow Creek Sioux Tribal Court for an order of paternity and to correct her birth record. The tribal court entered an order in 2008 declaring that Donald was Yvette's father and ordering the birth record to be changed to include him as Yvette's biological father. Based upon that order, the South Dakota Department of Health, Vital Records Office, issued a new birth certificate naming Donald as Yvette's biological father.

[¶6.] Proceedings to probate Lorraine's estate were commenced by Audrey in March 2010 with the filing of a petition to determine heirs and for her appointment as personal representative. Yvette opposed the petition on the basis that she was Lorraine's niece and was equally entitled to appointment. Yvette nominated herself and Tamara Allen (Tamara), another woman claiming status as Donald's child, to act as co-personal representatives of the estate. Alternatively, Yvette requested appointment of a special administrator.

[¶7.] The trial court appointed an attorney not otherwise involved in the estate proceedings to act as special administrator and set a hearing to determine heirs. Prior to that hearing, a motion for partial summary judgment was filed on behalf of Audrey and Clinton claiming that Yvette did not have standing under the pertinent statutes to assert that she was an heir of the estate. A hearing was held

on the motion on July 20, 2010. The trial court issued a memorandum decision (also designated as its findings of fact and conclusions of law) and an order on February 3, 2011, granting Audrey and Clinton partial summary judgment on the basis of Yvette's lack of standing. Yvette obtained the trial court's certification of its order as a final judgment pursuant to SDCL 15-6-54(b) and appealed the order to this Court.

## Issue 1

[¶8.]      **Whether Yvette's appeal should be dismissed for failure to serve the notice of appeal on Tamara.**

[¶9.]      After the filing of Yvette's notice of appeal, Audrey and Clinton moved to dismiss for failure to serve the notice on Tamara. This Court considered the motion and reserved its ruling, directing the parties to brief the issue as part of the appeal.

[¶10.]      This Court held in *In re Reese Trust*:

> SDCL 15-26A-4 sets forth the steps for taking an appeal to this Court. SDCL 15-26A-4(3) provides in pertinent part: "The appellant, or his or her counsel, shall serve the notice of appeal and docketing statement on counsel of record of each *party* other than appellant, or, if a *party* is not represented by counsel, on the *party* at his or her last known address." (Emphasis added). Failure to timely serve and file a notice of appeal is jurisdictionally fatal to the appeal. *Hardy v. W. Cent. Sch. Dist.*, 478 N.W.2d 832, 834 (S.D. 1991) (citing *W. States Land & Cattle Co., Inc. v. Lexington Ins. Co.*, 459 N.W.2d 429, 432 (S.D. 1990)).
>
> * * *
>
> Failure to serve a notice of appeal on a party before the time for taking an appeal has expired is fatal to the appeal and requires its dismissal. *See Long v. Knight Const. Co., Inc.*, 262 N.W.2d 207 (S.D. 1978) (citing *Morrell Livestock Co. v. Stockman's Comm'n Co.*, 77 S.D. 114, 86 N.W.2d 533 (1957)).

2009 S.D. 111, ¶¶ 5, 14, 776 N.W.2d 832, 833, 836. *See also In re B.C.*, 2010 S.D. 59, 786 N.W.2d 350; *Estate of Geier*, 2012 S.D. 2, __ N.W.2d__ .

[¶11.]    In *Reese Trust*, this Court looked to the law on trust proceedings to identify the parties the appellant in that case was required to serve with the notice of appeal. 2009 S.D. 111, ¶ 6, 776 N.W.2d at 834. *See also In re B.C.*, 2010 S.D. 59, ¶ 5, 786 N.W.2d at 351 (examining the Indian Child Welfare Act to identify the parties entitled to service of a notice of appeal in proceedings under that act); *Geier*, 2012 S.D. 2, ¶ 21, __ N.W.2d at __ (examining the law on probate proceedings to identify the parties required to be served with the notice of appeal). This action was commenced as a formal probate proceeding. Under the law applicable to probate proceedings, notice must be given in the manner prescribed in SDCL 29A-1-401. SDCL 29A-3-403(a). Under SDCL 29A-1-401, notice must be given to "any interested person." Both Yvette and Tamara were interested persons in Lorraine's estate, having asserted interests as putative children of Donald and potential heirs of Lorraine and having also been nominated to act as co-personal representatives of the estate. Although Yvette seeks to minimize Tamara's separate interest by asserting she and Tamara are "similarly situated claimants," the law on service of the notice of appeal requires service on "each" party, not just "adverse" parties as Yvette argues. *See* SDCL 15-26A-4(3).[2]

---

2.    Yvette bases her argument on SDCL 15-26A-6, repeatedly asserting that it requires service of the notice of appeal on only "adverse parties." SDCL 15-26A-6, however, is not the applicable rule. Although SDCL 15-26A-6 does refer to appeal time and service on "adverse parties," it is in the context of

(continued . . .)

[¶12.]	Based upon the foregoing, Tamara would normally be regarded as a separate party in this case entitled to separate service of the notice of appeal. However, Tamara is represented in this appeal by the same counsel who represents Yvette. Counsel argues that requiring service of the notice of appeal on Tamara would be "nonsensical" under these circumstances because it would have required counsel to serve himself. There is, however, conflicting authority on this point. In *Weeter Lumber Co. v. Fales*, the Idaho Supreme Court held that, where the same counsel was the attorney for three defendants and only one of them appealed, the notice of appeal did not need to be served upon the nonappealing defendants or their counsel. 118 P. 289 (Idaho 1911). *Weeter* has subsequently been interpreted by the Idaho Supreme Court as holding that, "representation by the same attorney of an appealing and nonappealing party has the effect of service of the notice of appeal on the nonappealing party." *Walker v. Shell*, 282 P. 947, 948 (Idaho 1929). A dissenting view in *Weeter*, however, focused on the potential conflict of interest for counsel representing appealing and nonappealing parties in the same case and suggested that separate service of the notice of appeal on the nonappealing parties themselves would afford them the opportunity to obtain other counsel and be

---

( . . . continued)

service of the notice of entry of the judgment or order appealed from, not service of the notice of appeal. Service of the notice of appeal is governed by SDCL 15-26A-4(3), which requires service on "*each* party other than appellant." (Emphasis added.)

properly represented. 118 P. at 290 (Sullivan, J., dissenting).[3] These views have subsequently been endorsed in *Box Elder Cnty. v. Harding*, 28 P.2d 601, 602 (Utah 1934) and *Donny v. Chain of Lakes Cheese Co.*, 35 N.W.2d 333, 334 (Wis. 1948).

[¶13.]    Despite the concerns mentioned by the dissent in *Weeter*, we are persuaded by the logic of the majority position in the case and adopt it as our own in similar circumstances. Accordingly, Audrey and Clinton's motion to dismiss Yvette's appeal for failure to serve the notice of appeal on Tamara is denied for the reason that Yvette and Tamara are represented by the same counsel and this had the effect of service of the notice of appeal on Tamara. *Weeter*, 118 P. 289; *Walker*, 282 P. at 948.

## Issue 2

[¶14.]    **Whether SDCL 29A-2-114(c) bars Yvette from asserting her status as Donald's natural born child.**

[¶15.]    SDCL 29A-2-114 sets forth the methods and time limits an individual born out of wedlock must comply with in order to establish parentage for purposes of intestate succession. The statute provides in relevant part:

> (a)    For purposes of intestate succession by, from, or through a person . . . an individual born out of wedlock is the child of that individual's birth parents.
>
> * * *
>
> (c)    The identity of the mother of an individual born out of wedlock is established by the birth of the child. The

---

3.    Although Justice Sullivan authored the majority opinion in *Weeter*, he also incorporated his dissenting views on the service issue, conceding that his associates did not concur with him in those views. 118 P. at 290 (Sullivan, J., dissenting).

> identity of the father *may* be established by the subsequent marriage of the parents, by a written acknowledgement by the father during the child's lifetime, by a judicial determination of paternity during the father's lifetime, or by a presentation of clear and convincing proof in the proceedings to settle the father's estate.

*Id.* (emphasis added).

[¶16.] The trial court held the methods and time limits in SDCL 29A-2-114 are exclusive and that Yvette's failure to comply with any of them deprived her of standing to maintain her claim that she is an heir of Lorraine's estate. Accordingly, the court granted Audrey and Clinton partial summary judgment against Yvette.

[¶17.] Focusing on the word "may" in SDCL 29A-2-114(c), Yvette argues that the statute is permissive and not mandatory and that her presentation of clear and convincing DNA evidence in the trial court proceedings was sufficient to establish Donald's paternity. In support of her argument, Yvette cites cases interpreting the word "may" in similar provisions of other state probate codes as permissive and not mandatory. *See Lewis v. Schneider*, 890 P.2d 148 (Colo. App. 1994); *In re Estate of Rogers*, 81 P.3d 1190 (Haw. 2003); *In re Estate of Palmer*, 658 N.W.2d 197 (Minn. 2003). In those cases, however, the courts were examining whether time limits in Uniform Parentage Acts applicable in determining child support obligations should bar establishment of paternity under intestate succession laws. *See id.* No such issue is presented here. South Dakota has not adopted the Uniform Parentage Act.[4]

---

4. South Dakota's only other statutes addressing establishment of paternity appear in SDCL ch. 25-8. Under those statutes, the time limit for bringing a paternity action expires with the eighteenth birthday of the child. SDCL 25-

(continued . . .)

[¶18.] The cases cited by Yvette determine the application of competing statutory schemes, but do not interpret a single, self-contained statute such as SDCL 29A-2-114. Although, ordinarily, the word "may" in a statute such as SDCL 29A-2-114(c) is given a permissive or discretionary meaning, in certain instances, it has the effect of "must." *Matter of Groseth Intern., Inc.*, 442 N.W.2d 229, 232 n.3 (S.D. 1989). As further explained in *Groseth*:

> Although the form of verb used in a statute, i.e., whether it says something "may," "shall" or "must" be done, is the single most important textual consideration determining whether a statute is mandatory or directory, it is not the sole determinant. Other considerations, such as legislative intent, can overcome the meaning which such verbs ordinarily connote. 2A Sutherland Stat. Const. § 57.03 at 643-44 (4th ed. 1984). In our search to ascertain the legislature's intended meaning of statutory language, we look to the words, context, subject matter, effects and consequences as well as the spirit and purpose of the statute.

*Id.*

[¶19.] An additional maxim useful in determining the mandatory or directory nature of a statute is *expressio unius est exclusio alterius*, "the expression of one thing is the exclusion of another." *Rush v. U.S. Bancorp Equip. Fin., Inc.*, 2007 S.D. 119, ¶ 10, 742 N.W.2d 266, 269. "The rule . . . may be used advantageously in determining whether a statute should be construed as mandatory or directory (permissive). As applied in this connection the rule is that if a statute provides one thing, all others implied are excluded." 3 Norman J. Singer,

---

( . . . continued)
8-9. Yvette turned eighteen in 1988. However, Audrey and Clinton have raised no argument that SDCL 25-8-9 bars Yvette's claimed interest in Lorraine's estate.

*Sutherland Statutory Construction* § 57:10 (6th ed. 2001). In an analysis of this rule, it has been observed that, "[a] statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way. Thus, the method prescribed in a statute for enforcing the rights provided in it is likewise presumed to be exclusive." 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:23 (7th ed. 2007). Further, "[i]t has also been assumed when the legislature expresses things through a list, . . . that what is not listed is excluded." *Id.*

[¶20.] SDCL 29A-2-114 provides that parentage for purposes of intestate succession is established in certain ways and *lists* those ways. Under the rule *expressio unius est exclusio alterius*, this implies a prohibition against any other way of establishing parentage for these purposes. It also implies that those methods not listed are excluded.

[¶21.] Yvette argues SDCL 29A-2-114 should be interpreted to permit proof of paternity through presentation of clear and convincing evidence, including DNA evidence, in *any* proceeding where the father's paternity is at issue. This would essentially rewrite the statute to omit its last clause limiting establishment of paternity by clear and convincing evidence to "proceedings to settle the father's estate." This would violate any number of settled rules of statutory construction. *See, e.g., People ex rel. J.L.*, 2011 S.D. 36, ¶ 4, 800 N.W.2d 720, 722 (noting that in determining the intent of a statute a court must confine itself to the language used); *City of Deadwood v. M.R. Gustafson Family Trust*, 2010 S.D. 5, ¶ 9, 777 N.W.2d 628, 632 (observing that in interpreting legislation this Court cannot add language

that is not there); *State ex rel. Dept. of Transp. v. Clark*, 2011 S.D. 20, ¶ 10, 798 N.W.2d 160, 164 (noting that in interpreting a statute this Court never presumes the Legislature intended to use surplusage in its enactments and, where possible, it must construe the law to give effect to all of its provisions).

[¶22.]     Based upon the plain language of SDCL 29A-2-114 and the foregoing authorities, we hold that the trial court did not err in determining that the methods and time limits in the statute for establishing paternity are exclusive.  A question remains, however, as to whether Yvette failed to comply with any of them.  The trial court found that Yvette had petitioned the Department of the Interior, Bureau of Indian Affairs, Office of Hearings and Appeals to reopen Donald's probate to include her as an heir.  For that reason, the court initially took this matter under advisement to see if Yvette's petition would be granted.  The court subsequently determined it could take more than a year to have Yvette's petition heard.  For that reason, the court issued its decision and this appeal followed.  The day after the filing of Yvette's appellant's brief, however, the Bureau of Indian Affairs tribunal issued an order directing any parties opposed to naming Yvette as an heir to Donald's estate to show cause for their objections within thirty days.[5]  Thus,

---

5.     We take judicial notice of the order to show cause. *See Opoka v. Immigration and Naturalization Serv.*, 94 F.3d 392, 394-95 (7th Cir. 1996) (observing the Courts of Appeals have the power and even the obligation to take judicial notice of relevant decisions of courts and administrative agencies made before or after the decision under review, including proceedings outside the federal judicial system, if they have a direct relation to matters at issue). *Accord Advanced Software Design Corp. v. Fed. Reserve Bank of St. Louis*, 583 F.3d 1371, 1379 n.3 (Fed. Cir. 2009). *See also Gibson v. Barnes*, 597 So.2d 176, 177 n.2 (La. Ct. App.  1992) (taking judicial notice of a U.S. District Court

(continued . . .)

Yvette's efforts to reopen Donald's probate may still prove successful, permitting her to comply with SDCL 29A-2-114(c) to establish Donald's paternity. In the interests of justice, therefore, we remand this matter to the trial court to wait for a reasonable time for the Bureau of Indian Affairs' decision and to proceed accordingly. Having reached this conclusion, we decline to address Yvette's constitutional arguments under Issue 3 of her brief. *See Sheehan v. United Pac. Ins. Co.*, 439 N.W.2d 117, 119 (S.D. 1989) (noting this Court defers deciding a constitutional question when the cause under review can be determined without reaching the constitutional issue).

[¶23.]     Reversed and remanded.

[¶24.]     KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.

---

( . . . continued)

order); *Smith v. Dorsey*, 599 So.2d 529, 548 (Miss. 1992) (taking judicial notice of a related federal interpleader action and its conclusion by a final judgment).