#27511-aff in pt & rev in pt-JMK
**2016 S.D. 60**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF THE
ESTATE OF LORRAINE ISBURG FLAWS,
DECEASED.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BRULE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE BRUCE V. ANDERSON
Judge

\* \* \* \*

ROBERT R. SCHAUB of
Schaub Law Office, PC
Chamberlain, South Dakota

PAUL O. GODTLAND
Chamberlain, South Dakota                          Attorneys for appellants Audrey
                                                   Isburg Courser and Clinton
                                                   Baker.

DEREK A. NELSEN of
Fuller & Williamson, LLP
Sioux Falls, South Dakota

DAVID J. LARSON
Chamberlain, South Dakota

and

JONATHAN K. VAN PATTEN
Vermillion, South Dakota                           Attorneys for appellee Yvette
                                                   Herman.

\* \* \* \*

ARGUED ON MARCH 22, 2016
OPINION FILED **08/31/16**

#27511

KERN, Justice

[¶1.]	Decedent named heirs in her will, but all heirs predeceased her, causing her estate to become subject to the laws of intestate succession. Decedent's brother had two children from his only marriage. These children were designated as heirs. The circuit court determined that Decedent's brother's illegitimate daughter was also an heir entitled to inherit equally from Decedent's estate. In reaching this decision, the circuit court found SDCL 29A-2-114(c) unconstitutional as applied to the illegitimate daughter. The brother's legitimate children appeal. We reverse and remand.

## BACKGROUND

[¶2.]	On February 18, 2010, Lorraine Isburg Flaws, a member of the Crow Creek Tribe, died testate. Lorraine's will distributed her property to her husband and her only child, both of whom predeceased her. Lorraine's parents and Donald Isburg, her only sibling, also predeceased her. Her will did not designate contingent beneficiaries, making her estate subject to the laws of intestate succession. Under the laws of intestate succession, Lorraine's estate would pass to Donald's children. Donald had two children from his marriage to Mavis Baker: Audrey Isburg Courser and Clinton Baker (Appellants). Donald also purportedly had two illegitimate daughters from other relationships: Yvette Herman, born June 1, 1970, and Tamara Isburg Allen, born October 11, 1965.

[¶3.]	At the time of his death on August 24, 1979, Donald, a member of the Crow Creek Tribe, owned tribal land held in trust by the United States Government. Accordingly, the United States Department of the Interior, Bureau of

Indian Affairs, Office of Hearings and Appeals, Probate Hearings Division (collectively the Interior Board of Indian Appeals or IBIA) probated his estate. In October 1980, the Crow Creek Bureau of Indian Affairs (BIA) Superintendent filed a form entitled Data for Heirship Finding and Family History. This form disclosed Donald's assets and indicated that Audrey and Clinton, also enrolled members of the Tribe, were Donald's children.

[¶4.]     In April 1981, a notice of probate hearing was mailed to potential heirs, including his sister, Lorraine, and his legitimate children, Audrey and Clinton. In a letter made under oath, Lorraine reported to the IBIA that she was Donald's sister and that Donald's only children were Audrey and Clinton. The IBIA completed the probate on June 8, 1981 and entered an order declaring Audrey and Clinton to be the sole heirs of Donald's estate. Audrey and Clinton inherited Donald's trust land in which he shared an ownership interest with Lorraine. Audrey and Clinton became tenants in common with Lorraine. In July 2003, fee simple patents were issued to Lorraine, Audrey, and Clinton, removing their land from trust. At the time of Lorraine's death in 2010, none of her land was held in trust with the federal government.

[¶5.]     This appeal concerns Yvette. She contends that, in addition to Appellants, she is entitled to a share of Lorraine's estate.[1] In order to receive a share of Lorraine's estate, Yvette must establish Donald's paternity under SDCL 29A-2-114(c). SDCL 29A-2-114 provides in relevant part:

---

1.     Tamara's appeal is addressed in *Estate of Flaws*, 2016 S.D. 61, ____ N.W.2d ____.

> (a) For purposes of intestate succession by, from, or through a person . . . an individual born out of wedlock is the child of that individual's birth parents.
>  . . . .
> (c) The identity of the mother of an individual born out of wedlock is established by the birth of the child. The identity of the father *may* be established by the subsequent marriage of the parents, by a written acknowledgement by the father during the child's lifetime, by a judicial determination of paternity during the father's lifetime, or by a presentation of clear and convincing proof in the proceeding to settle the father's estate.

(Emphasis added.) Yvette concedes that Donald did not recognize her in writing during his lifetime and that she was not judicially determined to be Donald's child prior to his death.

[¶6.] Yvette submits, however, that she has proven through DNA evidence that she is Lorraine's niece and Donald's daughter. DNA samples submitted by Yvette and Lorraine in 2005 established with 94.82% probability that Donald was Yvette's father. In 2008, relying on the DNA results, Yvette petitioned and received from the Crow Creek Sioux Tribal Court an order of paternity identifying Donald as her father. At Yvette's request, the South Dakota Department of Health issued Yvette a new birth certificate listing Donald as her father.

[¶7.] In early March 2010, after Lorraine's death, Audrey filed a petition for formal probate of Lorraine's estate in state court. Audrey petitioned for appointment as personal representative and to have Lorraine's heirs judicially determined. Tamara and Yvette objected to Audrey's appointment and requested appointment as co-personal representatives. After a hearing, the court appointed attorney Stan Whiting as special administrator of the estate.

[¶8.] In June 2010, Tamara and Yvette filed separate petitions with the IBIA to reopen Donald's probate to prove they were Donald's daughters and heirs. These requests were made 31 years after Donald died and 29 years after the probate was closed. While this matter was pending with the IBIA, Audrey and Clinton moved for partial summary judgment in state court against Yvette. They alleged that Yvette lacked standing to assert she was an heir because she could not satisfy any of the four methods set forth in SDCL 29A-2-114(c) to establish her father's identity. Yvette filed a motion contending that SDCL 29A-2-114 was facially unconstitutional because it prohibited her right to recover as an illegitimate child in violation of the Equal Protection Clause.

[¶9.] The circuit court agreed that Yvette could not comply with the first three methods of proving paternity set forth in SDCL 29A-2-114(c). In an incorporated memorandum decision and order, the court found that Yvette's parents did not marry, Donald did not acknowledge her in writing, and she was not judicially determined to be his child during his lifetime. The court found that Yvette's petition to reopen Donald's estate would likely take more than one year to resolve and granted partial summary judgment to Audrey and Clinton. The court denied Yvette's constitutional challenge, holding that the statute did not "create an insurmountable burden for" Yvette to inherit. Rather, according to the court, the statute served as a "legitimate limitation on the right of the child" to prove her right to inherit.

[¶10.] Yvette appealed the circuit court's decision, raising several issues, which we addressed in *In re Estate of Flaws* (*Flaws I*), 2012 S.D. 3, 811 N.W.2d

749. She argued that the four methods of establishing paternity set forth in SDCL 29A-2-114(c) did not foreclose other avenues of proof because "the identity of the father *may* be established" in certain ways as listed. *Id.* ¶ 17, 811 N.W.2d at 753 (emphasis added). We held that the methods of establishing paternity were indeed exclusive to those listed. Because Yvette could not satisfy any of the methods set forth in SDCL 29A-2-114(c), we held that her only remaining option was to present her proof in Donald's estate. Yvette's petition to reopen Donald's estate was still pending with the IBIA at the time of her appeal to this Court. Therefore, we reversed and remanded to the circuit court to await the IBIA's final determination regarding Donald's estate. We declined to address the issue regarding the constitutionality of SDCL 29A-2-114.

[¶11.]	In June 2011, the IBIA issued a show cause order, to which Appellants responded. In April 2012, the Indian Probate Judge denied Yvette's request to reopen Donald's probate. The probate court found that because the real property had "passed out of trust" it was "no longer subject to the probate jurisdiction of the Department of Interior." *Estate of Donald Isburg*, 59 IBIA 101, 101, 2014 WL 4262746, at *1 (August 20, 2014).[2]

[¶12.]	In September 2014, Appellants again moved for partial summary judgment in state court against Yvette, alleging she lacked standing to assert she was an heir. In response, Yvette filed a second notice challenging the

---

2.	Yvette appealed this order. In August 2014, the IBIA affirmed the denial of the request to reopen Donald's probate. This denial was not appealed to the United States District Court.

constitutionality of SDCL 29A-2-114. After a hearing, the court denied the motion for partial summary judgment and set the matter for a court trial.

[¶13.]     At the court trial in Lorraine's estate court proceeding, Yvette again presented evidence of Donald's paternity, despite her inability to prove paternity by any of the methods set forth in SDCL 29A-2-114(c). She also alleged the statute was unconstitutional as applied. Yvette argued that the statute impermissibly limited the forms of proof available to her as an illegitimate child in violation of the Equal Protection Clause. Yvette contended that her DNA evidence should be admissible in Lorraine's estate proceedings as it is reliable and widely accepted as a means to prove paternity. Additionally, she asserted that the State's only interest in this case was the avoidance of false claims. Because she filed her claim promptly after Lorraine's probate was opened, Yvette argued her claim had not delayed the efficient administration of the estate. The court took the matter under advisement.

[¶14.]     On June 9, 2015, the court issued an incorporated memorandum decision and order denying Appellants' motion for summary judgment. The court made findings regarding Yvette's paternity. The court found that Yvette's mother Joyzelle Gingway-Godfrey was romantically involved with Donald "during a time frame consistent with Yvette's conception." Additionally, Donald provided some financial assistance and visited Joyzelle and Yvette. In 2005, Yvette informed Lorraine she planned to pursue genetic testing with Tamara to establish Donald's identity as her father. Lorraine offered to participate in the genetic testing instead and voluntarily provided DNA samples. The DNA samples established with 94.82% probability that Lorraine and Yvette are related as aunt and child. The court found

the expert testimony regarding the DNA samples to be credible and scientifically reliable. The court concluded that the "DNA evidence establishes conclusively that Donald is Yvette's father."

[¶15.] With reference to Yvette's constitutional challenge, the court declared SDCL 29A-2-114 unconstitutional as applied to Yvette. The court held that "SDCL § 29A-2-114 undoubtedly makes a classification and distinction between illegitimate and legitimate children." While recognizing the State's legitimate interests, the court found they were not compelling. The circuit court found that Lorraine's probate was in its initial stages, and allowing Yvette's claim did not delay the efficient administration of the estate. Further, the court determined that the State's interest in avoiding false claims was not advanced by prohibiting Yvette from presenting DNA evidence in Lorraine's probate. Specifically, the court held that the failure of the statute to allow for the use of DNA evidence was "not substantially related to a legitimate government/state interest." The court acknowledged that SDCL 29A-2-114 was "adopted before DNA evidence was widely accepted in the scientific and legal communities." But the court noted that "the [L]egislature has not kept up with modern means of establishing paternity or heirship in this area of the law" and is "lagging behind the scientific realities of today's society." Finding SDCL 29A-2-114 unconstitutional as applied to Yvette, the court held that the statute "acts in an arbitrary and discriminatory manner without justification, hides the truth, and works an injustice."

[¶16.] On July 7, 2015, the court deined Appellants' motion for summary judgment and issued a judgment declaring heirship, finding Yvette "to be the child

of Donald Isburg, and as such the niece and heir of Lorrain [sic] Isburg Flaws, on equal footing with, and having the same rights and entitlements as Tamara Allen, Audrey Isburg Courser, and Clinton Baker[.]" Appellants appeal the denial of their motion for summary judgment and the court's judgment declaring heirship.

[¶17.]     We restate Appellants' issues as follows:

1.     Whether the circuit court erred by denying Appellants' motion for summary judgment.

2.     Whether SDCL 29A-2-114(c) violates the Equal Protection Clauses.

## STANDARD OF REVIEW

[¶18.]     A circuit court's jurisdiction is reviewed de novo. *Daktronics, Inc. v. LBW Tech. Co.*, 2007 S.D. 80, ¶ 2, 737 N.W.2d 413, 416. Similarly, "[s]tatutory interpretation and application are questions of law, and are reviewed by this Court under the de novo standard of review." *State v. Powers*, 2008 S.D. 119, ¶ 7, 758 N.W.2d 918, 920.

[¶19.]     A circuit court's findings of fact will be upheld "unless they are clearly erroneous." *Kreps v. Kreps*, 2010 S.D. 12, ¶ 25, 778 N.W.2d 835, 843. A finding of fact will be overturned on appeal if "a complete review of the evidence leaves the Court with a definite and firm conviction that a mistake has been made." *Id.* (quoting *Pietrzak v. Schroeder*, 2009 S.D. 1, ¶ 37, 759 N.W.2d 734, 743). Conclusions of law are reviewed under the de novo standard of review. *Tri-City Assocs., L.P. v. Belmont, Inc.* (*Tri-City I*), 2014 S.D. 23, ¶ 19, 845 N.W.2d 911, 916.

## ANALYSIS

*1.     Whether the circuit court erred by denying Appellants' motion for summary judgment.*

[¶20.] Appellants argue the circuit court erred in denying their motion for summary judgment for two reasons. First, Appellants contend that to allow Yvette to establish Donald's paternity in Lorraine's state court probate violates the Supremacy Clause. Appellants argue the determination of Donald's heirs must occur only in Donald's probate, which is in the exclusive jurisdiction of the Department of the Interior. Second, Appellants submit that Yvette lacks standing as her claims are untimely and barred by the statutes of limitations set forth in SDCL 29A-3-412 and 43 C.F.R. § 30.243(a) (2016).

[¶21.] Yvette, in response, contends that the circuit court's determination of Lorraine's heirs did not impose upon federal jurisdiction in any way. Nor did it implicate the Supremacy Clause. She argues the BIA made no ruling on her claim that she is Donald's daughter. And accordingly the BIA's decision does not affect her "right to prove that she is *Lorraine's* heir in *Lorraine's* South Dakota probate[.]" Yvette also contends that the statutes of limitations relied upon by Appellants are inapplicable to the facts of her case and do not negate her standing. She also alleges that the Appellants fail to cite the correct test to analyze standing.

### a. *Supremacy Clause*

[¶22.] The United States Constitution article VI establishes the Constitution of the United States as "the supreme Law of the Land[.]" U.S. Const. art. VI, cl. 2. This supremacy is recognized in the South Dakota Constitution in article VI, § 26. The South Dakota Constitution also expressly recognizes the supremacy of the federal government in matters pertaining to Indian lands. It provides,

> That we, the people inhabiting the state of South Dakota, do agree and declare that we forever disclaim all right and title to . . . all lands lying within [the boundary of South Dakota] owned or held by any Indian or Indian tribes . . . and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States . . . .

S.D. Const. art. XXII, § 2. The Supreme Court of the United States has similarly restricted "the assertion of state regulatory authority over tribal reservations and members" in two areas. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142, 100 S. Ct. 2578, 2583, 65 L. Ed. 2d 665 (1980). First, a state's "exercise of such authority may be pre-empted by federal law." *Id.* The second restriction applies where the exercise of authority "may unlawfully infringe 'on the right of reservation Indians to make their own laws and be ruled by them.'" *Id.* (quoting *Williams v. Lee*, 358 U.S. 217, 220, 79 S. Ct. 269, 271, 3 L. Ed. 2d 251 (1959)).

[¶23.] There is a strong presumption against federal preemption. *FMC Corp. v. Holliday*, 498 U.S. 52, 62, 111 S. Ct. 403, 410, 112 L. Ed. 2d 356 (1990) (noting the "presumption that Congress does not intend to pre-empt areas of traditional state regulation"). We begin "with the assumption that the States' historic police powers are not to be superseded, '[b]ut that presumption can be overcome where . . . Congress has made clear its desire for pre-emption.'" *Botz v. Omni Air Int'l*, 286 F.3d 488, 493 (8th Cir. 2002) (quoting *Egelhoff v. Breiner*, 532 U.S. 141, 151, 121 S. Ct. 1322, 1330, 149 L. Ed. 2d 264 (2001).

[¶24.] Federal preemption "occurs when Congress . . . expresses a clear intent to pre-empt state law, . . . where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, . . . or where the state law stands as an obstacle to the accomplishment and execution of the full objectives

of Congress." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368-69, 106 S. Ct. 1890, 1898, 90 L. Ed. 2d 369 (1986) (citations omitted). *See also Estate of Ducheneaux v. Ducheneaux*, 2015 S.D. 11, ¶ 11, 861 N.W.2d 519, 524.

[¶25.] We first address explicit federal preemption. Appellants contend that the Supremacy Clause prohibits state "courts from ignoring the BIA's determination of Donald's heirs and re-determining them." They argue that, pursuant to 25 U.S.C. § 372, the BIA's decisions are final and conclusive.[3] Appellants then direct us to a number of cases in support of their position that the power to determine heirs rests exclusively with the BIA. However, none of Lorraine's property is held in trust by the federal government. It is undisputed that Lorraine received a fee simple patent from the federal government in 2003, removing her land from trust. Accordingly, the bulk of Appellants' authority is inapposite as the cited cases involve the disposition of trust lands.[4] As the federal government has no property interest in Lorraine's assets, the statute is inapplicable.

---

3. 25 U.S.C. § 372 (2012) provides in part:

> When any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under the Indian Land Consolidation Act [25 U.S.C.A. § 2201 et seq.] or a tribal probate code approved under such Act and pursuant to such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decisions shall be subject to judicial review to the same extent as determinations rendered under section 373 of this title.

4. Appellants direct us to *Bertrand v. Doyle*, 36 F.2d 351 (10th Cir. 1929), and *Spicer v. Coon*, 238 P. 833 (Okla. 1925), in support of the proposition that "the BIA's conclusive right to determine heirs relates to all questions of

(continued . . . )

[¶26.] Additional grounds for federal preemption occur where there is implicit in federal law a barrier to state regulation or where the state law stands as an obstacle to the accomplishment of the objectives of Congress. *Estate of Ducheneaux*, 2015 S.D. 11, ¶ 11, 861 N.W.2d at 524; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S. Ct. 2890, 2899, 77 L. Ed. 2d 490 (1983). Neither exists in this case. As discussed above, 25 U.S.C. § 372 grants the Department of the Interior exclusive jurisdiction and authority to probate Indian lands held in trust. The South Dakota Constitution and our case law recognize this exclusivity. Appellants have not established any barrier to the exercise of state court jurisdiction over non-trust lands. Nor have Appellants shown that the exercise of state jurisdiction is incompatible with a competing federal interest or contrary to the objectives of Congress.

[¶27.] While it is evident that Congress intended to exercise jurisdiction over probates of Indian lands held in trust, there is no evidence that Congress intended to control probates of Indian estates involving non-trust land. *See* 25 U.S.C. § 2206 (2012). Such probates are treated the same as those of non-Indians owning fee

_____

( . . . continued)

heirship" and is not subject to review by the circuit court. Neither lends support to Appellants' position as both involve determination of heirship in trust lands. The court in *Bertrand* stated, "The Act [25 U.S.C. § 372] clearly applies to both past and future allotments and to all questions of heirship of the allottee *arising within the trust period*." *Bertrand*, 36 F.2d at 352 (emphasis added). In *Spicer*, the court addressed the issue whether state courts had jurisdiction to review the Secretary of the Interior's determination of decedent's heirs. 238 P. at 835. The court properly determined that "the Secretary of the Interior was the sole tribunal for the determination of" decedent's heirs when decedent "died before the expiration of the trust period without having disposed of his allotment by will[.]" *Id.* at 834-35.

simple land. Congress has not created a federal probate code but instead relies upon the states to establish their own probate codes. Congress, through federal legislation, has limited its jurisdiction of probates to those involving Indian lands held in trust. It is for this reason that the IBIA declined to exercise jurisdiction to consider Tamara's and Yvette's petitions to reopen Donald's estate. If Congress intended to maintain exclusive jurisdiction over all probates involving Indians under any circumstances, it would have enacted the necessary legislation to accomplish this intent.

[¶28.]     Appellants' argument that the IBIA's 1981 order determining Donald's heirs is binding and cannot be re-determined in Lorraine's state court proceeding is similarly unavailing. The existence of trust lands in which the United States government has an interest is a jurisdictional prerequisite for preemption. Yvette's attempt to establish heirship in Lorraine's state court proceeding will not infringe upon the jurisdiction of the Secretary of the Interior. The circuit court did not err by denying Appellants' motion for summary judgment under the Supremacy Clause.

> b.     *Standing*

[¶29.]     Appellants' arguments that Yvette lacks standing to attack the constitutionality of SDCL 29A-2-114(c) are misplaced. This Court has recognized five requirements necessary to establish standing. An individual must establish:

> (1) a personal injury in fact, (2) a violation of his or her own, not a third-party's rights, (3) that the injury falls within the zone of interests protected by the constitutional guarantee involved, (4) that the injury is traceable to the challenged act, and (5) that the courts can grant redress for the injury.

*Good Lance v. Black Hills Dialysis, LLC*, 2015 S.D. 83, ¶ 12, 871 N.W.2d 639, 643-44. Yvette satisfies all of the requirements necessary to establish standing. The

injury alleged is personal to Yvette, "not a third party, and it is not a generalized grievance of the population." *Id.* ¶ 13, 871 N.W.2d at 644. Further, Yvette is affected by the application of the statute and has an interest as she is "a person belonging to the class allegedly discriminated against"—illegitimate children. *See State v. Reed*, 75 S.D. 300, 302, 63 N.W.2d 803, 804 (1954). Yvette's alleged injury is within the interests protected by the Equal Protection Clause of the South Dakota Constitution. And, if Yvette can demonstrate that SDCL 29A-2-114(c) is unconstitutional as applied to her, redress may be granted by affirming the circuit court's order—allowing Yvette to inherit.

### c. Statutes of Limitations

[¶30.] Lastly, we address whetherYvette's claims are barred by the statutes of limitations set forth in SDCL 29A-3-412 and 43 C.F.R. § 30.243(a). Appellants first argue that because Yvette was not named as an heir in Donald's estate before it closed, Yvette's claims are barred by SDCL 29A-3-412. This statute provides that an individual may petition to vacate a probate order "twelve months after the entry of order sought to be vacated." Yvette, however, no longer seeks a determination of heirship in Donald's estate. The IBIA conclusively determined it lacked jurisdiction to reopen the estate because the estate no longer contained any lands held in trust. Yvette seeks a determination of heirship in Lorraine's estate. Although SDCL 29A-3-412 is applicable to Lorraine's estate, Lorraine's probate proceedings are in their earliest stages. Her heirs have not been conclusively determined, assets have not been divided, and no final order has been entered. SDCL 29A-3-412 is inapplicable.

[¶31.] Similarly, Appellants' argument that Yvette is barred from re-opening Donald's estate per 43 C.F.R. § 30.243(a) is meritless. 43 C.F.R. § 30.243 provides that an interested party can petition to re-open a closed Indian probate "within 3 years after the date of the original decision and within 1 year after the petitioner's discovery of an alleged error." But again, Yvette is not seeking to reopen Donald's estate. She seeks designation as Lorraine's heir in Lorraine's probate proceeding in state court.

### 2. Whether SDCL 29A-2-114(c) violates the Equal Protection Clauses.

[¶32.] Appellants argue that the circuit court exceeded its jurisdiction in declaring SDCL 29A-2-114(c) unconstitutional as applied to Yvette. They contend this Court directed the circuit court to wait for the IBIA's decision before proceeding. Appellants assert that after the IBIA refused to re-open Donald's probate, the circuit court should have promptly dismissed Yvette's claims because she conceded she could not meet the criteria of the statute. In response, Yvette contends that because this Court's opinion in *Flaws I* did not address the constitutionality of SDCL 29A-2-114(c), she is not precluded from presenting her constitutional claim.

[¶33.] We reserve the power to remit a "judgment or decision to the court from which the appeal was taken, to be enforced accordingly . . . ." SDCL 15-30-14. Upon remittal, a "circuit court's jurisdiction must conform to the dictates of our opinion." *State v. Piper*, 2014 S.D. 2, ¶ 10, 842 N.W.2d 338, 343. In *Flaws I*, we determined the circuit court did not err in finding that the methods and time limits established in SDCL 29A-2-114(c) were exclusive. 2012 S.D. 3, ¶ 22, 811 N.W.2d at

754. We declined to address Yvette's argument that SDCL 29A-2-114 was unconstitutional. *Id.* (citing *Sheehan v. United Pac. Ins. Co.*, 439 N.W.2d 117, 119 (S.D. 1989)). We remanded the case directing the circuit court "to wait for a reasonable time for the [IBIA's] decision and to proceed accordingly." *Id.* Because we declined to address the constitutional arguments in *Flaws I,* the circuit court's conclusion that SDCL 29A-2-114(c) is unconstitutional as applied to Yvette does not exceed the dictates of our opinion.

[¶34.]     As the circuit court did not exceed its jurisdiction, we next consider whether SDCL 29A-2-114(c) violates the Equal Protection Clauses of either the United States or South Dakota Constitutions. "[A]lleged violations of constitutional rights are reviewed de novo." *Good Lance,* 2015 S.D. 83, ¶ 8, 871 N.W.2d at 643. Yvette, as the party challenging the constitutionality of SDCL 29A-2-114(c), bears the burden to prove beyond a reasonable doubt that the statute is unconstitutional. *Green v. Siegel, Barnett & Schutz*, 1996 S.D. 146, ¶ 7, 557 N.W.2d 396, 398. We begin with "a strong presumption that the laws enacted by the legislature are constitutional and that presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a constitutional provision." *Wuest v. Winner Sch. Dist. 59-2*, 2000 S.D. 42, ¶ 32, 607 N.W.2d 912, 919.

[¶35.]     Appellants argue that SDCL 29A-2-114(c) does not violate the Equal Protection Clause when read with other probate statutes as it does not create a classification between legitimates and illegitimates. Additionally, Appellants contend that even if a classification is created, such classification is not arbitrary. Appellants assert that SDCL 29A-2-114(c) is substantially related to the State's

legitimate interests. Such interests include the orderly administration of estates, "probate efficiency, certainty and the prompt determination of heirs." In response, Yvette submits that SDCL 29A-2-114(c) is unconstitutional as applied to her. Yvette argues that, under the statute, she is discriminated against because she is classified as an illegitimate. She argues that this "disparate treatment of 'illegitimate' children is not 'substantially related,' or even 'rationally related,' to any government interest under these facts."

[¶36.] The circuit court held that SDCL 29A-2-114(c) created a classification between legitimate and illegitimate children as children were treated differently depending on whether they were born in or out of wedlock. The court ruled that the statute was unconstitutional as applied to Yvette because it prohibited her from proving paternity with DNA evidence simply because Donald's estate was closed. The court concluded that "the failure to allow this . . . evidence . . . to inherit . . . is NOT substantially related to a legitimate government/state interest."

[¶37.] In analyzing whether SDCL 29A-2-114(c) impermissbly denies equal protection of the law, we ask whether its terms are prohibited by the Fourteenth Amendment of the United States Constitution or Article VI, § 18 of the South Dakota Constiution.[5] *Accounts Mgmt., Inc. v. Williams*, 484 N.W.2d 297, 299 (S.D.

---

5. U.S. Const. amend. XIV, § 1 provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

(continued . . . )

1992). This Court employs a two-part test to examine whether a statute violates either of the Equal Protection Clauses. *Tibbs v. Moody Cty. Bd. of Comm'rs*, 2014 S.D. 44, ¶ 6, 851 N.W.2d 208, 212; *People in Interest of Z.B.*, 2008 S.D. 108, ¶ 7, 757 N.W.2d 595, 599. First, we determine whether SDCL 29A-2-114(c) creates "an arbitrary classification among citizens[.]" *Tibbs*, 2014 S.D. 44, ¶ 6, 851 N.W.2d at 212. Second, we determine whether the statute is substantially related to important government objectives because this case involves a classification based upon illegitimacy. *See Astrue v. Capato ex rel. B.N.C.*, --- U.S. ---, ---, 132 S. Ct. 2021, 2033, 182 L. Ed. 2d 887 (2012) (citing application of intermediate level of scrutiny to classifications based upon illegitimacy); *Clark v. Jeter*, 486 U.S. 456, 461, 108 S. Ct. 1910, 1914, 100 L. Ed. 2d 465 (1988) ("To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective.").

[¶38.] In *Lalli v. Lalli*, the Supreme Court of the United States considered the constitutionality of a New York paternity statute. 439 U.S. 259, 261-62, 99 S. Ct. 518, 521, 58 L. Ed. 2d 503 (1978). The statute allowed an illegitimate child to inherit from his father only if a court of competent jurisdiction entered an order of paternity during the father's lifetime. In finding the statute constitutional, the Supreme Court determined the statute was related to important state objectives including the orderly disposition of property at death. The Court also noted that

---

( . . . continued)
     S.D. Const. art. VI, § 18 provides, "No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

-18-

permitting the father to participate and defend in paternity proceedings furthered the objective of reducing fraudulent claims.

[¶39.]       Similarly, in *In re Erbe*, we reviewed the statutory procedures by which an illegitimate child could inherit from her father.  457 N.W.2d 867, 869 (S.D. 1990).  The case involved a constitutional challenge to SDCL 29-1-15, the precursor to SDCL 29A-2-114(c).  The provisions of SDCL 29-1-15 allowed an illegitimate child to inherit from her father if he acknowledged her in writing in the presence of a competent witness.  Paternity could also be established if the parents married and thereafter the father acknowledged the child as his own or adopted the child into his family.  In denying the constitutional challenge, we held that the statute properly distinguished between the various categories of proof available to illegitimates to establish paternity and was related to legitimate state interests.  We acknowledged that, to further its interests, the State may apply "'a more demanding standard' for illegitimate children who seek to inherit from their father's estate" in order to promote the efficient administration of estates and avoid spurious claims.  *Erbe*, 457 N.W.2d at 869 (quoting *Lalli*, 439 U.S. at 265, 99 S. Ct. at 523).

[¶40.]       In applying this precedent to Yvette's challenge, we agree with the circuit court that SDCL 29A-2-114(c) creates a classification as it sets forth methods by which an illegitimate child may inherit from her father.  Although SDCL 29A-2-114(c) creates a classification, Yvette must prove beyond a reasonable doubt that SDCL 29A-2-114(c) cannot withstand intermediate scrutiny because it is not substantially related to important government interests.

[¶41.] Yvette claims that SDCL 29A-2-114(c), which limits her DNA evidence only to proof in Donald's estate, does not promote the orderly administration of estates. She contends that she asserted her rights in Lorraine's estate "early and often," and to allow her proof will not impede the probate. She relies primarily upon *Reed v. Campbell*, 476 U.S. 852, 106 S. Ct. 2234, 90 L. Ed. 2d 858 (1986), for the assertion that "a State's interest in 'finality' is drastically curbed when the 'administration of the estate is pending and in its initial stages.'" But, *Reed* is clearly distinguishable.

[¶42.] In *Reed*, the Supreme Court of the United States reversed the Texas Court of Appeals' holding that an illegitimate child was unable to inherit from her father's estate. *Id.* at 853, 106 S. Ct. at 2236. At the time of Reed's father's death, the probate code "prohibited an illegitimate child from inheriting from her father unless her parents had subsequently married." *Id.* at 853, 106 S. Ct. at 2236. Reed's father, who died intestate, was never legally married to her mother. While the probate was pending, Reed, citing as authority a recently-released opinion from the Supreme Court of the United States, *Trimble v. Gordon,* filed her claim to inherit from her father's estate. 430 U.S. 762, 772, 97 S. Ct. 1459, 1466, 52 L. Ed. 2d 31 (1977). The Court in *Trimble* held that a "total statutory disinheritance of illegitimate children whose fathers die intestate" was unconstutional. *Id.* The trial court denied Reed's claim, holding that *Trimble* did not apply retroactively because Reed's father died four months before *Trimble* was decided and Reed's claim was filed after the decision. *Reed*, 776 U.S. at 856, 106 S. Ct. at 2237. The Supreme Court of the United States reversed the decision. It concluded that *Trimble* could be

applied retroactively because "neither the date of [decedent's] death nor the date the claim was filed had any impact on the relevant state interest in orderly administration[.]" *Id.* at 856, 106 S. Ct. at 2238.

[¶43.]     Yvette's reliance upon *Reed* is misplaced. Unlike the statute in *Reed*, SDCL 29A-2-114(c) does not preclude Yvette from being declared an heir solely because of her status as an illegitimate child. Rather, Yvette's claim fails because she cannot satisfy any of the criteria for proving paternity set forth in SDCL 29A-2-114(c). In *Reed*, the Court reiterated that a state may not discriminate against "illegitimates in order to express its disapproval of their parents' misdoconduct." *Id.* at 854, 106 S. Ct. 2237. But the Court acknowledged that states have an interest in the orderly administration of estates and may create appropriate restrictions. *Id.* at 854-55, 106 S. Ct. at 2237. This interest "may justify the imposition of special requirements upon an illegitimate child who asserts a right to inherit from her father, and, of course, it justifies the enforcement of generally applicable limitations on the time and the manner in which claims may be asserted." *Id.* at 855, 106 S. Ct. at 2237.

[¶44.]     Accordingly, "[o]ur inquiry under the Equal Protection Clause does not focus on the abstract 'fairness' of the statute, but on whether the statute's relation to the state interests it is intended to promote is so tenuous that it lacks the rationality contemplated by the [Equal Protection Clause]." *Erbe*, 457 N.W.2d at 870. Few statutes "are entirely free from the criticism that they sometimes produce inequitable results." *Id.* SDCL 29A-2-114(c) is no different. The statute sets forth the requirements which govern the orderly presentation and resolution of paternity

claims including the opportunity to present proof in the father's estate. Yvette cannot satisfy any of the methods to establish paternity provided for in SDCL 29A-2-114(c). Regardless of the potential for an unjust result, we cannot declare that SDCL 29A-2-114(c) is unconstitutional solely because it does not permit Yvette to introduce DNA evidence in Lorraine's estate. Yvette has failed to meet her burden of establishing beyond a reasonable doubt that the statute is not substantially related to important governmental interests.

[¶45.]     When interpreting legislation, this Court's purpose "is to discover the true intention of the law [as] ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said." *City of Deadwood v. M.R. Gustafson Family Tr.*, 2010 S.D. 5, ¶ 6, 777 N.W.2d 628, 631. We "cannot add language that simply is not there." *Rowley v. S. Dakota Bd. of Pardons & Paroles*, 2013 S.D. 6, ¶ 12, 826 N.W.2d 360, 365. Nor can we rewrite the langage of the statute as this is an action reserved for the Legislature. Likewise, the circuit court's concern that the Legislature "has not kept up with modern means of establishing paternity or heirship in this area of the law" is not grounds to find the application of the statute unconstitutional.

## CONCLUSION

[¶46.]     The circuit court did not err in denying Appellants' motion for summary judgment. The state court probate of Lorraine's estate is not prohibited by the Supremacy Clause. Further, the court properly determined that Yvette had

standing under *Good Lance* to bring her claims. Yvette's claims are not barred by the statutes of limitations set forth in SDCL 29A-3-412 and 43 C.F.R. § 30.243(a).

[¶47.] The circuit court did err, however, when it declared SDCL 29A-2-114(c) unconstitutional as applied to Yvette. Although SDCL 29A-2-114(c) creates a classification between legitimate and illegitimate children, we find it constitutional as applied to Yvette under both our federal and state constitutions. The statute does not unfairly discriminate against illegitimates. Rather, it sets forth reasonable methods by which illegitimates may inherit and is substantially related to important government interests. Under the statute, proof of paternity may occur by the subsequent marriage of the parents, or by written acknowledgment, or judicial determination during the father's lifetime. The final method permits proof of paternity in the father's estate by clear and convincing evidence. This higher standard of proof at this stage protects against spurious claims. The fact that Yvette cannot satisfy any of the criteria set forth in SDCL 29A-2-114(c) does not render the statute unconstitutional as applied. Although this may be an unjust result, the remedy lies not with this Court. The decision to expand the provisions of SDCL 29A-2-114(c) to permit other forms of proof, such as DNA evidence in proceedings not limited to the father's estate, is within the exclusive province of the Legislature. We reverse and remand for entry of an order consistent with this opinion.

[¶48.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.