#24409-rev & rem-JKK

**2007 SD 70**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

COUNTRYSIDE SOUTH
HOMEOWNERS ASSOCIATION, INC.,      Plaintiff and Appellee,

    v.

CRAIG NEDVED,                      Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE A. P. FULLER
Judge

* * * *

JASON M. SMILEY of
Gunderson, Palmer, Goodsell &
  Nelson                  Attorneys for plaintiff
Rapid City, South Dakota     and appellee.

RICHARD E. HUFFMAN
MICHAEL V. WHEELER of
DeMersseman Jensen Christianson
  Stanton & Huffman, LLP    Attorneys for defendant
Rapid City, South Dakota     and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MAY 21, 2007

OPINION FILED **07/11/07**

#24409

KONENKAMP, Justice

[¶1.]    A homeowner sought to build a storage shed in a community governed by restrictive covenants. His request was denied, not because the proposed shed violated any specific provision of the covenants, but because it violated size limitation rules enacted by the homeowners' association committee. In circuit court, the decision was upheld and an injunction was issued. Because the committee exceeded its powers when it adopted the new rules and denied the homeowner's request based solely on those rules, we reverse and remand.

## Background

[¶2.]    Craig Nedved purchased a home on April 30, 1996. The home is located in the Countryside South Subdivision, Pennington County, South Dakota. On March 18, 1994, the Countryside South Homeowners Association, Inc. (Association) adopted the "Declaration of Covenants, Conditions and Restrictions, Countryside South Subdivision" (Covenants). They were recorded on April 4, 1994, with the Pennington County Register of Deeds. At some point after Nedved purchased his home, the Association's Architectural Control Committee (Committee) adopted its "Architectural Control Committee Additional Rules, Regulations and Guidelines" (Rules and Regulations). These Rules and Regulations state that they apply to Article VII of the Covenants. They were adopted "to provide the Architectural Control Committee and Homeowners additional information and guidelines regarding interpretation of the covenants."

[¶3.]    The rule pertinent to this case provides:

Several homeowners have requested approval of yard sheds.
The covenants provide little in the way of guidance to the

-1-

Architectural Control Committee and homeowners regarding sheds. Sheds shall not exceed a footprint dimension of 10' x 12'. The finish and roof [sic] the shed shall be consistent with the color, style and materials used on the home. The walls shall not exceed 7' in height and the shed shall have a typical 4/12 pitch in the roof. All sheds constructed prior to August 15, 1999 have been approved and are hereby grandfathered.

Nothing in these rules indicates when they were adopted.

[¶4.] On February 28, 2006, Nedved submitted a request to the Committee to build an L-shaped 16'x18' shed on his property. The minutes from the committee meeting state that "[t]he Board immediately took the position that the size of [the] structure was not in compliance with the covenants of the development. . . . It would not be approved unless modifications were made to his proposal to bring the size . . . into compliance with established guidelines." Jay Hoffman, the president of the Association, wrote to Nedved informing him that the Committee considered his request and had no "choice but to deny it as inconsistent with the covenants and architectural control guidelines. It is simply too big. . . . The board has already decided via the architectural control guidelines that a shed larger than 10'x12' does not satisfy these standards." On May 24, 2006, board member and attorney, Pamela Snyder-Varns, wrote to counsel for Nedved stating, "The Board stood by its decision to deny [Nedved's] request. The shed is simply too big. Please consider this written notice of the Board's decision."

[¶5.] In July 2006, the Association learned that Nedved had leveled a building site for his proposed shed, spread gravel, and placed forms to pour a slab. Because the Association believed that Nedved intended to build in violation of its decision, the Association sought a temporary restraining order. The circuit court

granted the order and set the matter for a hearing on whether a permanent injunction should issue.

[¶6.] The parties submitted stipulated facts along with briefs in support of their respective positions. The Association argued that under the Covenants and subsequently adopted Rules and Regulations, Nedved's proposed shed was "too big." The Association claimed that under Article VII, section 5, for Nedved to be permitted to build his shed the Committee must approve the "quality of workmanship and materials, harmony of external design with existing structures and . . . location with respective topography and finished grade elevation." Because the Rules and Regulations required that the shed not exceed 10'x12', the Association asserted that Nedved's request violated the Covenants.

[¶7.] Nedved, on the other hand, averred that the Association rejected his proposal only because the shed exceeded the 10'x12' requirement in the Rules and Regulations, not because it violated the Covenants. And because the Association exceeded its powers when it adopted the Rules and Regulations, the Association's decision to deny his request was unreasonable, arbitrary, and capricious.

[¶8.] In the court's memorandum decision, later incorporated into its findings and conclusions, it ruled that there was nothing in the Covenants restricting the Committee from adopting the Rules and Regulations. Specifically, the court stated, "As the Board of Directors changes from time to time and as the Architectural Control Committee changes from time to time, the interpretation of this covenant may well change from time to time." In granting a permanent injunction, the court concluded that the Committee could rightfully adopt new rules

and the Association's decision to deny Nedved's request was not unreasonable, arbitrary, or capricious.

[¶9.] Nedved appeals asserting that the court erred when it granted the permanent injunction because (1) the Committee exceeded its authority when it adopted the Rules and Regulations, (2) the decision to deny his request was unreasonable, arbitrary, and capricious, and (3) his shed satisfied the Covenants as it was in harmony with the external design of existing structures. Since the court's decision was based on stipulated facts and because covenants are essentially contracts, we review these questions de novo. Harksen v. Peska, 1998 SD 70, ¶11, 581 NW2d 170, 173 (citing Spring Brook Acres Water Users Ass'n, Inc. v. George, 505 NW2d 778, 780 (SD 1993) (citing Baker v. Wilburn, 456 NW2d 304, 306 (SD 1990))).

## Analysis and Decision

[¶10.] The primary question here is whether the Committee exceeded its authority when it adopted the Rules and Regulations without following Article X of the Covenants. Article X requires a 75% vote of the members before the Covenants can be amended. It also requires that any approved amendment be recorded.[1] The Association asserts that there exists an inherent power to adopt these rules. Specifically, it contends that because Article VII allows the Association to establish

---

1. Article X of the Covenants states, "This Declaration may be amended during the first twenty (20) year period by an instrument signed by not less than seventy-five percent (75%) of the Lot Owners, and thereafter by an instrument signed by not less than sixty-six and two-thirds percent (66-2/3%) of the Lot Owners. The Amendment must be recorded."

the Committee, implicit in that is a power to promulgate guidelines "to flesh out the language of the Covenants by limiting the size of sheds, among other things." According to the Association, "[i]t is important for a body such as this, with a membership that changes from time to time, to have an aid such as the [Rules and Regulations] to help apply the restrictive Covenants on a fair and consistent basis."

[¶11.]      A covenant is a contract between the governing authority and individual lot owners. Armstrong v. Ledges Homeowners Ass'n, Inc., 633 SE2d 78, 84-85 (NC 2006) (citations omitted); *see also* Wilson v. Playa de Serrano, 123 P3d 1148, 1150 (ArizCtApp 2005) (citations omitted). It "represents a meeting of the minds and results in a relationship that is not subject to overreaching by one party or sweeping subsequent change." *Armstrong*, 633 SE2d at 84-85 (citations omitted). Because restrictive covenants are contractual in nature, we ascertain the intent of the parties at the time they contracted. Prairie Hills Water & Dev. Co. v. Gross, 2002 SD 133, ¶26, 653 NW2d 745, 751 (citation omitted); Piechowski v. Case, 255 NW2d 72, 74 (SD 1977); *see also* Villas West II of Willowridge v. McGlothin, 841 NE2d 584, 597 (IndCtApp 2006) (citation omitted); Riss v. Angel, 934 P2d 669, 675 (Wash 1997).

[¶12.]      From the language of the 1994 Covenants, the parties clearly intended for the Committee to have the power to amend Article VII, section 5. However, this power exists only when the Committee obtains a 75% vote of the lot owners and the amendment is properly recorded.[2] Therefore, absent the 75% vote of the lot owners

---

2.      There is only one provision in the covenants that allows for the power of enacting rules. It is under Article VII, section 10. That provision relates only

(continued . . .)

and proper recordation, lot owners are bound only by the restrictions contained in Article VII, section 5 of the Covenants. *See Wilson,* 123 P2d at 1150; *see also* Raman Chandler Properties, L.C. v. Caldwells Creek Homeowners Ass'n, Inc., 178 SW3d 384, 391 (TexCtApp 2005) (if the power to amend exists in the covenants, "the amendment of a restrictive covenant must be in the precise manner authorized by the dedicating agreement") (citation omitted); Barris v. Keswick Homes, L.L.C., 597 SE2d 54, 57 (VA 2004) (express language of the covenants prevents interpretation otherwise).

[¶13.]     When the Committee adopted the Rules and Regulations without a 75% vote of the lot owners, it improperly amended the Covenants. It is immaterial that the Board and Committee members change from time to time or need guidance in applying and interpreting the language of the Covenants. There is nothing in the Covenants that gives the Committee or Association the power to unilaterally adopt new rules and regulations simply to aid in interpreting and applying Article VII, section 5. *See* Johnson v. Dick, 281 SW2d 171, 175 (TexCtApp 1955) (the existing authority is found in the written instrument). If we were to adopt the Association's position that it had an inherent power to amend Article VII, section 5, we would have to ignore the express language of the Covenants and disregard the lot owners' right to vote. Had the Association desired the Committee to have the power to

---

(. . . continued)
to "Landscaping" and gives the Committee the power to adopt rules and regulations for the "preservation of natural resources, trees, and grass. . . ."

adopt new rules and regulations to aid in interpreting Article VII, section 5, it certainly could have provided for such, as it did with Article VII, section 10.

[¶14.]     The Committee exceeded the authority granted to it by the Covenants when it failed to comply with Article X before amending Article VII, section 5, to restrict shed size to 10'x12'.  Therefore, the circuit court erred when it held that the language of the Covenants did not prohibit "the Architectural Control Committee from enacting rules or guidelines to assist it, and future Architectural Control Committees, in their interpretation of the covenant."

[¶15.]     The Association also argues that its denial was not based solely on the Rules and Regulations, but that Nedved's request was denied because it was not in harmony with the external design of existing structures.  Based on our review of the record, the Association's argument cannot be sustained.  Nedved and the Association submitted stipulated facts to the court indicating that Nedved's request was denied because the shed was larger than 10'x12'.  There was no stipulation that the Committee rejected Nedved's request based on the language of the 1994 Covenants.  Moreover, there was no stipulation that the request was denied because it was not in harmony with the external design of existing structures.  The 10'x12' language clearly comes from the Committee's Rules and Regulations.  The denial was based solely on the Committee's conclusion that the request failed to conform to the Rules and Regulations.

[¶16.]     As we stated, the Rules and Regulations were not properly adopted and the Committee was only empowered to approve or disapprove Nedved's request based on the language of the 1994 Covenants.  The 1994 Covenants permitted the

Committee to evaluate Nedved's shed proposal to determine if it satisfied the "quality of workmanship and materials, harmony of external design with existing structures and . . . location with respective topography and finished grade elevation." This evaluation the Committee has not done.[3] Thus, we reverse and remand for further proceedings consistent with this opinion.

[¶17.]     Reversed and remanded.

[¶18.]     GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.

---

3.     In his brief to this Court, Nedved correctly points out that the Committee was required to assess his proposal to determine whether it was in harmony with the external design of existing structures and that it "never engaged in any such analysis."