#28027-aff in pt & rev in pt-GAS
**2017 S.D. 54**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ROBERT HARLAN &
GENEIEVE HARLAN,                                   Plaintiffs and Appellants,

v.

FRAWLEY RANCHES PUD
HOMEOWNERS ASSOCIATION, INC.,            Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MICHELLE K. PERCY
Judge

\* \* \* \*

DYLAN A. WILDE of
Wilde & Hunt, Prof. LLC
Spearfish, South Dakota                            Attorneys for appellants.


ROGER A. TELLINGHUISEN
MICHAEL V. WHEELER of
DeMersseman, Jensen
  Tellinghuisen & Huffman, LLP
Rapid City, South Dakota                           Attorneys for defendant and
                                                   appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
MAY 30, 2017
OPINION FILED **09/13/17**

#28027

SEVERSON, Justice

[¶1.] Robert and Geneieve Harlan are landowners whose land is subject to a "declaration of covenants, conditions, restrictions, and reservations for land[.]" On September 20, 2013, the Frawley Ranches Planned Unit Development Homeowners Association, Inc. (HOA) filed a certificate of renewal and amendment to the covenant with the Lawrence County Register of Deeds. The Harlans brought this action seeking declaratory judgment declaring the certificate invalid because it was alleged to have been filed in violation of the requirements established by the covenant. They also brought a claim to quiet title to their property. After a trial to the court, the circuit court denied the Harlans' claims. The Harlans appeal. We affirm in part and reverse in part.

## Background

[¶2.] The Harlans are joint tenants of real property located in a planned unit development and conveyed to them by Frawley Ranch, Inc. Their deed is subject to "The Declaration of Covenants, Conditions, Restrictions and Reservations for Land Owned or Possessed or Held by Frawley Ranch, Inc." The Declaration of Covenants was recorded on September 29, 1993. The Declaration of Covenants provided that all record owners, excluding lessees and security interest holders, of the lots or parcels described within the document are members of the HOA. Among other powers, the HOA is granted the "power to administer and enforce all provisions" of the Declaration of Covenants. According to its terms, the Declaration of Covenants is initially in "full force and effect for a term of twenty (20) years" and it is:

> automatically extended for successive periods of twenty (20) years, unless there is an affirmative vote to terminate th[e] Declaration by the then members of the Association casting 90% of the total votes cast at an election held for such purpose within six (6) months prior to the expiration of the initial period hereof or any extension.

[¶3.] Each member of the HOA is entitled to one vote for each lot in which they hold the interest required for membership. In the case of joint ownership of a parcel, such as the Harlans', only one vote per individual lot or parcel is allowed. At the time relevant to this case, there were 35 voting interests within the development; five of those interests belonged to Frawley Ranch, Inc.

[¶4.] At an annual HOA meeting on June 5, 2013, the HOA discussed amending the Declaration of Covenants so that it would automatically extend for successive periods of five years rather than successive periods of twenty years. It was agreed at the HOA meeting that the vote to amend would be conducted by email. On August 29, 2013, the HOA's secretary and board member, Todd Knutson, emailed the members with a proposed covenant attached. It instructed the members that "everyone must vote to either approve or reject" the new covenant and that they must reply to the email with their vote. It explained that failure to reply to the email would be considered a "NO vote." After obtaining votes by the members, the HOA board of directors determined that 90% of the members voted in favor of the amendment. On September 20, 2013, it recorded an amendment extending the Declaration of Covenants for five years. In response, the Harlans commenced this action. They alleged that the election to amend the Declaration of Covenants is required to occur at either the annual meeting of the members or a

special meeting of the members and that there was not the requisite 90% of interests voting in favor of the amendment.

[¶5.]        After a court trial on August 22–23, 2016, the circuit court denied the Harlans' claims for declaratory judgment and quiet title.  It issued findings of fact and conclusions of law.  It determined that the Declaration of Covenants did not require that an election for amending the Declaration of Covenants be held at a meeting of the members or in person and therefore an email vote was proper.  In its findings of fact 24 and 25, the court found:

> 24.  There were a total of 35 votes.
>
> 25.  There were 32 'yes' votes and three 'no' votes.  The affirmative vote percentage in favor of the amendment was 91.43%.

Lastly, it determined that Frawley Ranches had proven the affirmative defenses of waiver, laches, and estoppel.  The Harlans appeal to this Court raising three issues. They contend the circuit court erred by determining: (1) that the email vote was a valid and binding vote; (2) that the affirmative defenses of waiver, laches, and estoppel applied; and (3) that the requisite 90% vote was obtained.

## Standard of Review

[¶6.]        "The interpretation of a covenant is a legal question which we review de novo." *Halls v. White*, 2006 S.D. 47, ¶ 4, 715 N.W.2d 577, 579.  We review the circuit court's findings of fact for clear error.  *Id.*

## Analysis

**1.  *Whether the Declaration of Covenants permits an election to amend to be conducted by email.***

[¶7.] The Harlans contend Article III of the Declaration of Covenants, in conjunction with the bylaws of the HOA, require voting on amendment of the Declaration of Covenants be held at a meeting of the members. "When interpreting the terms of a restrictive covenant, we use the same rules of construction applicable to contract interpretation." *Id.* ¶ 7, 715 N.W.2d at 580. Article III provides:

> Section 1. Term; Method of Termination and Amendments.
>
> This Declaration shall be in full force and effect for a term of twenty (20) years from the date this Declaration is recorded in the Lawrence County Register of Deed's Office. After twenty (20) years, this Declaration, as amended, shall be automatically extended for successive periods of twenty (20) years, *unless there is an affirmative vote to terminate this Declaration by the then members of the Association casting 90% of the total votes cast at an election held for such purpose within six (6) months prior to expiration of the initial period hereof or any extension.* This declaration shall not be subject to termination or amendment sooner than upon the expiration of twenty (20) years from and after the initial recording hereof, except by Declarant before the conveyance of any Lot or Parcel or upon the express written agreement of all members of the Association and Declarant.[*]
>
> If the necessary votes and consents are obtained, the Board shall cause to be recorded with the Register of Deeds of Lawrence County, South Dakota, a certificate of termination, or a certificate of amendment, as the case may be, duly signed by the President or Vice-President and attested by the Secretary or

---

* The Harlans contend in footnote 1 of their initial brief that "The certificate of Renewal and Amendment goes beyond merely changing 'the words **twenty (20)** to **five (5)**' as stated in Knutson's August 29, 2013 email as it eliminates the ability to terminate or amend the Declaration upon the express written agreement of all members of the Association and Declarant." Contrary to their assertion, there is still an ability to terminate the covenants with a 90% vote. The certificate of renewal states that the covenants shall be for a term of five years and then renew for additional periods of five years "unless there is an affirmative vote to terminate the Covenants by the then members . . . casting 90% of the total votes . . . ." The last sentence of the first paragraph is eliminated; however, the last sentence only imposed additional requirements for termination or amendment sooner than the initial 20 years. Therefore, it would not apply to the renewal, and it makes sense that the renewal would exclude such language.

> Assistant Secretary of the Association with their signatures acknowledged. There upon, in the case of termination, these Covenants shall have no further force and effect. In the case of amendment, the Covenants shall continue in full force and affect for the remainder of the term subject to said amendment.

(Emphasis added.) The Declaration of Covenants is silent regarding any requirements of the election to be held under Article II. However, "[i]n addition to the right to adopt rules and regulations on the matters expressly mentioned" within the Declaration, the HOA has the right "to adopt rules and regulations with respect to all other aspects of the Association's right, activities, and duties, provided said rules and regulations are not inconsistent with the provisions of th[e] Declaration." Accordingly, the Harlans refer this Court to various provisions of the bylaws that they believe require an election to occur at either an annual meeting of the members or at a special meeting of the members.

[¶8.]  The bylaws set forth that there be an annual meeting of the members and allow the board of directors to call a special meeting for any purpose. But the bylaws do not require voting to be held at a meeting of the members. The Harlans believe the bylaws make it clear that any vote of the members is intended to occur at a meeting of the members because throughout the bylaws there are repeated references to voting at meetings of the members. For example, Article X of the bylaws provides in part that the bylaws may be amended by the board of directors "or by a two-thirds majority of the members at any regular or special meeting of the membership." The method of voting at a meeting of members is also set forth. Article II, section 8 states that "[a]t all meetings of members, a member may vote in person or by proxy executed in writing by the member or by the duly authorized

attorney-in-fact. Such proxy shall be filed with the secretary of the Corporation before or at the time of the meeting." Nevertheless, neither the Declaration of Covenants nor the bylaws require that an election to amend the Declaration of Covenants be held at a meeting of the members; they are silent on the requirements of the election.

[¶9.] There is also no requirement that the election be in person or through proxy. The section in the bylaws setting forth how a member may vote only applies to meetings of members, not to amendment of the Declaration of Covenants. Accordingly, the circuit court was correct to conclude that an electronic vote such as one through email was properly established by the HOA.

### 2. *Whether the court erred in determining that the affirmative defenses of waiver, laches and estoppel applied.*

[¶10.] The circuit court determined that waiver, laches, and estoppel applied against the Harlans, and it denied their claims based on those affirmative defenses. The Harlans assert that the circuit court erred by determining those defenses applied because they did not have full knowledge of material facts. They assert they did not know the Board would be monitoring votes as they came in or that Knutson would contact members who voted "no" and follow-up with certain members (but not all members) to ensure there was no confusion on the amendment. It is unclear how these facts are material to the issue of whether the Declaration of Covenants allowed an election through email. The circuit court based its decision on its finding that the Harlans participated in the email vote. The court determined that such conduct constituted "'a clear, unequivocal and decisive act' showing an intention to relinquish any alleged right to compel votes to

occur at an annual or special meeting." Nevertheless, we need not address the court's decision regarding the affirmative defenses. Having determined that the Declaration of Covenants allowed an election through email, it is unnecessary to address whether the court erred in its additional holding that waiver, laches, and estoppel applied.

### 3. *Whether the court erred by determining that the requisite 90% of votes cast were in favor of the amendment.*

[¶11.] First, the Harlans challenge the vote of Daryll Propp, President of Frawley Ranch, Inc., and President of the HOA. They assert Propp needed a proxy or corporate resolution to vote on behalf of Frawley Ranch, Inc. Since Propp had no such proxy, the Harlans claim Propp's votes on behalf of Frawley Ranch, Inc., were invalid.

[¶12.] The Harlans also contend the vote to amend failed because not all of the votes were cast by email as established by the HOA and as directed by Knutson. One HOA member, Jim Roth, directed his daughter to email his vote from her email account rather than emailing through his own account. According to the Harlans, this was improper because no proxy was presented as required by the bylaws in section 8. The circuit court found "there is no dispute that Jim Roth favored the proposed amendment and intended to vote 'yes.'"

[¶13.] Another member, the Billings family, was in Alaska and voted by text message because they did not have a phone capable of receiving and sending emails. The Harlans claim such a vote is improper because it did not comply with the email instructions sent by Knutson. The circuit court found that "there is no dispute that

the Billings intended to vote in favor of the proposed amendment, and that they did so in a timely manner."

[¶14.] The Harlans also challenge Knutson's vote. There was no evidence that Knutson, who was in charge of collecting and tallying the votes, responded to himself in an email with his vote. Thus, the Harlans allege that he never voted. Once again, the circuit court explicitly found that Knutson was in favor of the amendment and recorded his vote on the spreadsheet where he recorded all of the votes.

[¶15.] The HOA's decision to hold an election by email to amend the covenants did not violate the Declarations of Covenants or bylaws. Neither the bylaws nor the Declaration requires that a vote to amend or terminate covenants occur at an in-person meeting. Instead, the Declaration provides that a vote to amend must occur "at an election." The Declaration also provides that the HOA may "adopt rules and regulations with respect to all other aspects of the Association's right, activities, and duties, provided said rules and regulations are not inconsistent with the provisions of th[e] Declaration." Here, the HOA decided to hold the election to amend by email and adopted rules with respect to that election. The HOA adopted specific rules governing the election to amend and did not follow those rules.

[¶16.] After deciding to hold the election to amend by email, the HOA, via Secretary Todd Knutson, informed the members the manner in which the election to amend would be held. The email to the members provided:

> Attached is a copy of the proposed new covenants and everyone
> must vote to either approve or reject.

> This will be a vote using email so you MUST reply to this email with your vote. If you do not reply to this email with your vote, it will be considered a NO vote.
>
> . . . .
>
> So to recap, a YES vote will change the length of time the covenants are enforce [sic], a NO vote will leave them unchanged and they cannot be changed until the year 2033.
>
> Thank you and remember to vote with your reply email.

[¶17.] Knutson kept track of the members' votes on a spreadsheet. According to the spreadsheet, the election passed with an affirmative vote by 90% of the total votes. However, the Harlans claim Propp was required to obtain proxies for his five votes for Frawley Ranch, Inc. And it is undisputed that not all the affirmative votes were made by the members' email as requested. Roth did not vote via his *own* email, the Billings family voted by text message, and Knutson sent no email vote (he mentally voted "YES" and tallied that vote).

[¶18.] This election is governed by the rules adopted by the HOA, not what the Declaration of Covenants permitted. Thus, we must decide the legal question whether Propp's votes on behalf of Frawley Ranch, Inc., Roth's vote via his daughter's email, the Billings family's text message, and Knutson's mental vote complied with the rules and procedures adopted by the HOA governing amendment of the Declaration of Covenants.

[¶19.] Regarding Propp's vote on behalf of Frawley Ranch, Inc., no proxy is required. Section 8 of the bylaws is applicable to meetings of members, which, as discussed, did not occur here. Section 8 states "[a]t all meetings of members, a member may vote in person or by proxy . . . ." Thus, the circuit court did not clearly err when it found that "Propp is the President of Frawley Ranch . . . [and] was entitled to exercise

five votes on behalf of Frawley Ranch, Inc. for the five lots which Frawley Ranch, Inc. owned at the time of the vote."

[¶20.]     However, the votes not cast by reply email require further analysis.  In *Countryside South Homeowner's Association v. Nedved*, we recognized that "[a] covenant is a contract between the governing authority and individual lot owners." 2007 S.D. 70, ¶ 11, 737 N.W.2d 280, 283.  Under the contract here, the HOA adopted rules governing the election to amend.  The adopted rule permitted voting only by email, and it mandated that email votes had to be made by a reply to the Secretary's email.  The rule was very clear: "This will be a vote *using email* so *you* MUST reply to *this email* with *your* vote.  If *you* do not reply to *this email* with *your* vote, *it will be considered a NO vote.*"  (Emphasis added.)  After recapping this procedure, Knutson then reminded the members "to vote *with your reply email.*" (Emphasis added.)  These rules bound both the members and the HOA.  *See Nedved*, 2007 S.D. 70, ¶ 11, 737 N.W.2d at 283*; St. John's Hosp. Med. Staff v. St. John Reg. Med. Ctr., Inc.*, 90 S.D. 674, 245 N.W.2d 472 (1976) (both the association and members are bound by the bylaws).

[¶21.]     Under the adopted rule, the Secretary (Knutson) could not record "YES" votes unless the vote was made by a *reply email*.  The "reply email rule" was clear and unambiguous, and it did not permit alternative methods of voting.  Thus, it is immaterial that Roth, the Billings family, and Knutson were in favor of the amendment.  Roth did not reply via his *own* email, and neither the Billings nor Knutson voted in the manner required under the rules adopted with respect to this election.  Therefore, the HOA was required to consider their votes as "NO" votes, the circuit court erred as a matter of law in counting votes cast by methods not

agreed to by the members, and in determining that 90% of the members voted to amend the term of the covenant. We reverse as to this issue.

## Conclusion

[¶22.]     Nothing within the Declaration of Covenants of the HOA or within its bylaws requires that an election to amend the Declaration of Covenants' term be conducted at an annual or special meeting of the members. However, the court did err when it determined that 90% of the members of the HOA voted to amend the term of the covenant. We affirm as to Issues 1 and 2, and reverse as to Issue 3, and remand to the circuit court to address the amendment filed with the Lawrence County Register of Deeds.

[¶23.]     GILBERTSON, Chief Justice, and ZINTER and KERN, Justices, and WILBUR, Retired Justice, concur.